## HENRY BERRY v. JOHN G. HARNAGE ET AL.

1. It is improper to submit to the jury matters of construction of written instruments.

2. Because the court and jury ignored the questions of possession and of limitation, the only issues which could have been submitted to the jury, this case has not been tried on its merits, and for this reason the case is reversed.

3. A power of attorney authorizing the collection of debts and of personal property, and containg the following clause: "Upon the receipt of any such debt, dues or issues of money, acquittances or other discharges for me, and in my name to make, seal, execute deeds of conveyance and deliver, and generally do all and every act or acts, thing or things, device or devices, in the law, whatsoever needful and necessary to be done in and about the premises, for me and in my name to do, execute and perform:" held, insufficient authority to sell real estate, and only allowing deeds of release for mortgages, or to affect contracts theretofore made.

APPEAL from Rusk. Tried below before the Hon. J. B. Williamson.

This was a suit by Henry Berry to establish boundary of lands that he claimed to own on the Daniel Reed league, claiming the west fourth of the league. Harnage and his co-defendants denied that Berry had any interest in the land, and pleaded the statutes of limitation, and treated Berry's suit as an action in trespass to try title.

Berry claimed the west fourth of the Daniel Reed league under deeds from Reed, the grantee. Title issued to Reed, May 16, 1835, who sold and conveyed the west fourth to Alexander Jordan, October 10, 1837. Jordan sold part of the land to Abraham H. Scott, November 22, 1837, and Scott to Hiram W. Moss, April 26, 1844. Moss executed power of attorney to James M. Pearce, April 17, 1852. Pearce, as attorney of Moss, sold to Wordsworth & Smith, May 30, 1854, and Wordsworth & Smith sold to Berry, September 22, 1857. Wordsworth & Smith took actual possession of the land Berry claimed, in the year

1855, and kept actual possession until they sold to Berry, who took actual possession, which he held until suit was brought.

W. J. Smith and Berry showed that they had paid the taxes on the land after Wordsworth & Smith's purchase, in 1855.

The appellees, John G. Harnage and the heirs of Jesse Mayfield, claimed title to only a part of the land claimed by Berry under conveyances from the heirs of John Jordan.

It was not claimed that Daniel Reed, the grantee of the land, ever sold any part of his grant except the part Berry claimed, and which was embraced in the deed of Reed to Alexander Jordan, dated October 10, 1837, and under which Berry claimed.

Verdict and judgment for the defendants, and a new trial being refused, the plaintiff appealed.

*Jones & Fields*, for appellant, cited 4 Kent, 318, 345 ; Story on Agency, Secs. 74, 130, 131, 133 ; Story's Eq., Sec. 173 ; 6 Peters, 328, 'Boardman v. Lessees of Reed & Ford ; 5 Wheat., 326, Mechanics' Bank of Alexandria v. The Bank of Columbia ; 37 Texas, 168, Williams v. Talbot ; 16 Texas, 513, Watrous v. McGrew ; 4 Barb., 373 ; 4 Cow., 645 ; 1 Hill, 501 ; 28 Texas, 290, Whitehead v. Foley; 26 Texas, 718, Moody v. Holcomb.

*Walton & Green*, also for appellant.—The court, not the jury, is the judge of the legal effect of instruments.

Upon an inspection, it will appear that on the seventeenth of April, 1852, Hiram W. Moss, at his then place of residence, in Van Buren, in the State of Arkansas, reciting that he was then about removing to California, made James M. Pearce, of the same place, his attorney in fact, for him and in his name, "to ask, demand, sue for,

recover and receive all such sum and sums of money, debts, goods, wares,. dues, accounts and other demands whatever, which are or may be due, owing, payable and belonging to me, or detained from me by any manner of ways and means whatever, in whose hands soever the same may be found; giving and granting unto my said attorney, by these presents, my whole and full power, strength and authority, in ·and about. the premises, to have, use, and take all lawful ways and means, in my name and for the purposes aforesaid, upon the receipt of any such debts, dues or issues of money, acquittances or other sufficient discharge, for me, and in my name, to make, seal, execute deeds of conveyance and deliver, and generally all and every act or acts, thing or things, device or devices, in the law whatsoever needful and necessary to be done in and about the premises, for me and in my name to do and execute and perform," etc.

This power contains no authority to sell anything; and more especially no authority for the attorney to make a sale of real estate owned by the grantor. Its language is specific as to the objects for which it was created. It is, in the language of Bayley, J., in Atwood v. Mannings, 7 B. & C., 278 (cited in Dunlop's Payley's Agency, margin page 195), "rather a power to take than to bind." It was not necessary that any property should be sold, as the power was to collect assets for the grantor, and, in the further language of the case above cited, "the words must be confined to that which is their obvious meaning," viz., an authority to collect and gather together the personal assets of the grantor, that they might not be lost by his removal.

A power could possibly be implied, that in the collection of the "goods and wares," the agent might, for the interest of his principal, sell them and turn them into money; or if, in the collection of the "debts, dues and

accounts," he was compelled to take real estate, he could sell the real estate thus taken and turn it into money, and for such land he might make deeds of conveyance.

But it was never intended that the agent should have power to sell land then owned and possessed by the grantor. Had it been so intended, it would in the enumeration of objects for which the power was given have been specially mentioned.

"Indeed, all written powers, such as letters of attorney or letters of instructions, receive a strict interpretation, the authority never being extended beyond that which is given in terms, or is absolutely necessary for carrying the authority so given into effect." (Dunlap's Payley's Agency, top p. 192; North River Bank v. Aymor, 3 Hill, 262; 6 Cushing, 117; Bouv. Law. Dic. on Power of Attorney.)

The case of Rossiter v. Rossiter, 8 Wend., 498–500, is in point, when the letter of attorney, after giving power to collect demands, etc., and to dispose of real estate, gave power, at the discretion of the attorney, to accomplish a complete adjustment of all the concerns of the principal.

In the adjustment of these matters a note was given for the principal by the agent, to relieve a mortgage lien on a portion of the property; the court, citing 1 Taunt., 356, hold "that the most enlarged powers must be construed with reference to the subject matter;" that the authority of a special agent must be strictly pursued; "that the letter of attorney specifies two subjects upon which authority is given, and it is added to accomplish a complete adjustment of all my concerns in said State;" and accordingly they decided that the power only extended to the collection of money or the sale of real estate, and denied the power of giving the note to relieve the property. As to how our own court has construed such powers, see

Harrington v. Moore, 21 Texas, 549; and Reese v. Medlock, 27 Texas, 124.

It is obvious that this power is to be construed with reference to the objects enumerated, all of which relate to the management of the personal estate of the principal, and that the words therein, as to the acquittances and discharges or "deeds of conveyance" which he is empowered to make, relate only to transactions in reference to such property, that the parties from whom he might receive money, or goods and wares, should have written evidence of the adjustment of the same.

We are not informed, but it might have been that the principal had mortgages on property for money loaned in which a deed of release might be regarded necessary, or he might have sold land and given bond for title and a deed to be executed when the purchase money was paid, in which case we imagine the words used, "seal, execute deeds of conveyance, and deliver," would have their proper signification.

But the mere direction as to how he shall evidence his transactions in respect to the object of the power, will not be so construed as to add to the objects another and different subject.

That is, where the objects enumerated relate exclusively to the collection of personal assets, no implication will be raised to extend it also to real estate, merely because in a general direction as to how to evidence his transactions in the name of his principal words are used which are ordinarily applicable to real estate only. For this were not to construe the power strictly, as is required with respect to written powers, but, we think, with most unwarranted liberality.

When we take into consideration the circumstances surrounding this case, the reasons urged by us in our construction of the letter of attorney are greatly strengthened.

But the appellant claims that by lapse of time and non-claim on the part of Moss, the acts of Pearce have been ratified. This is without any foundation whatever. It is well said in Reese v. Medlock, 27 Texas, 124: "But unquestionably the burthen of proving the ratification of the unauthorized act of the agent devolves upon the party asserting it. Assent may in some cases be presumed from acquiescence after notice. But it is a principle too clear for doubt or question, and of universal recognition, that there can be no binding ratification without full knowledge." (See also Rossiter v. Rossiter, 8 Wend., 498–500; 1 Am. Leading Cases, 574; Note to Colon v. Ashley, 19 Pick., 300.)

No case can be found to the contrary of this doctrine, because the court say that "it is too clear for doubt or question, and of universal recognition."

Wherein, then, has the appellant shown the notice of this transaction in the pretended sale of this land by Pearce, the agent, to Wordsworth & Smith?

*Long & Long*, also for appellant.—After discussing the testimony, they conclude, therefore, that the appellees have in no sense or degree relieved themselves from the attitude of resisting the plaintiff's application to have this west quarter of the Reed headright league of land set apart to him under his regular, unbroken chain of title from the government, without showing any title to themselves or either of them to the same.

They are no better than officious intermeddlers with matters in which they show no right whatever.

All the other parts of the argument are directed to an attack upon the power of attorney from Moss to Pearce, in order to break one link in plaintiff's chain of title.

We beg leave to call especial attention to the fact that the appellees, in both their able and elaborate briefs, have

failed to notice, and seem to have totally overlooked, another and important part of our original or opening brief. W.e allude to that part in which title to this land is distinctly claimed by possession for five years, cultivating, using, paying taxes, etc., as prescribed by statute (Pas. Dig., Art. 4623), "under deed or deeds duly registered." Under this statute plaintiff—if he had no other title—acquired as full and perfect a title to the land as he could by any deed or patent from the government, or from any true owner of the same. If this section (Sec. 16, Act of 1848) be indeed a statute of limitations, barring the remedy in favor of defendants, it is also a statute conferring title upon those who had none except as acquired by actual possession and the payment of taxes for the term of five years, upon which they may sue in any form as plaintiffs.

In Wofford v. McKinna, 23 Texas, 36, Wheeler J., in construing this 16th Section of the act, in determining what kind of "deed or deeds duly registered" is meant by this section, says : "It must be an instrument, by its own terms or with such aid as the law requires, assuming and purporting to operate as a conveyance; not that it shall proceed from a party having title, or must actually convey title to the land, but it must have all the constituent parts, tested by itself, of a good and perfect deed." The deed or deeds under which plaintiff held the land in possession, cultivating the same and paying taxes thereon, is not denied to come up to the requirements of this statute, whether there be a link missing in the chain of title from the government to plaintiff or not ; and it is equally true that the proof in the record is full, complete and undisputed. The plaintiff did possess and cultivate the land, and pay taxes on the same, for much more than five years before the institution of this suit. This possession, though only a small part was in cultivation, extended to

and embraced the whole tract described in the deed or deeds, as expressly decided in Whitehead v. Foley, 28 Texas, 290.

If this view of the case is found to be correct—and there is believed to be nothing in the proof, and in the long and able briefs of counsel, in any degree in conflict with it— the only possible conclusion is, that the court below should have granted the prayer of plaintiff, and declared the land in controversy his property, and have thus established its boundaries, so as to quiet his title and remove all cloud from the same. In the case already cited of Moody v. Holcomb, 26 Texas, 714, a case in some respects identical with this, the court, by Moore, J., says : "Naked possession for the 'length of time and with the incidents enumerated in the statute, invests the party with a title or right to the land as fully and completely as it could be done by deed or patent.' Why, then, should not the courts as willingly and readily grant their aid in relieving a title of this character from doubt and embarrassment as any other, or interpose to protect the owner from future injury? The very nature of the title, and the evidence by which it must be established, would seem to justify the owner in invoking the aid of the court. * * * * The legal effect and object of such suits are solely to establish the plaintiff's and conclude the defendant's title by the judgment." In the present case it is plain that every fact necessary to justify and require a decree in favor of plaintiff is fully established by the findings of the special issues submitted to the jury. There being no question of fact to be ascertained by a jury, there is no necessity to remand the case for that purpose.

*Stedman, Bagley & Ector*, for appellees, cited 12 Texas, 37, Smith v. Cheatham; 21 Texas, 546, Harrington v. Moore; 34 Texas, 79, Leland v. Wilson; 27 Texas, 641, Watson v. Hopkins ; 15 Texas, 64, Dorn v. Best.

*Walton & Green*—Supplemental brief for appellees.—
In this case the appellant, by his amended brief, calls
special attention to the question of the statute of limita-
tion, alleging that the proof shows that he had title to
the land thereunder.

There is no such averment in the petition; but the de-
fendants deny the title of plaintiff, and claim on their part
under the three and five years statute. It is believed that
whosoever claims title under the statute must plead it.

Article 4629, Paschal's Digest, declares: "The statute
of limitation in this State shall not be made available to
any one in any suit in any of the courts of this State,
unless it be specially set forth as a defense in their an-
swer."

The only answer that can be made to this is, that as the
statute uses words "unless it be specially set forth in
their answer," etc., the law is only applicable to defend-
ants, and not to plaintiffs. This would be a narrow con-
struction to give to the law, which in its enacting clause
declares that the statute shall not be made available "to
any person in any suit in any of the courts," etc.

The object of the law was in strict conformity with the
other general rule, adopted in our pleadings, that the
plaintiff in his pleadings shall state the grounds of his
action, and the defendant the grounds of his defense, so
that parties may be put on notice of the character of
proof necessary to meet the cause of their adversary.

If the construction of the statute be not that which is
given by us, then the plaintiff has no pretense for setting
it up here as a title, because he is forced upon the only
other construction, that the statute can only be plead by
the defendant as a shield, and cannot be used as a sword
by the plaintiff. But there is no evidence to bear out the
assertion of title by the statute.

In our former brief we have conclusively shown that

the plaintiff did not have a consecutive chain of transfer upon which to base the three years statute.

He must show cause, therefore, under the five years statute.   In this he utterly fails.

Finally, we are at a loss to know how one who claims in his petition that he is a tenant in common with defendants can, on trial, insist on adverse possession as a basis of right.

*Long & Long*, for appellant—Reply to supplemental brief.—The objection to title in plaintiff by five years possession, paying taxes, etc., that the deed from Moss to Wordsworth & Smith was not recorded until 1872, about the time this suit was instituted, is groundless, for two good reasons :

1. The statute giving title by possession does not require that more than one deed shall be "duly registered"— deed or deeds duly registered are the words. The deed from Wordsworth & Smith to plaintiff being duly registered, is quite sufficient.

2. The deed from Moss to Wordsworth & Smith, now objected to, must be regarded as duly registered, because it was filed for record on the day of its execution in the proper office.   The transcript, page 52, shows this indorsement on the deed :

"Hiram W. Moss, deed to Wordsworth & Smith, filed for record this thirtieth day of May, A. D. 1854, at 12 o'clock M.

(Signed)                                    "S. G. SWAN,

                          "C. C. C. Rusk County.

"By W. A. LEM. SWAN, Deputy."

This is fully equal to actual record as against third parties.   (Pas. Dig., Art. 4983.)

The other objection in the supplemental brief of Wal-

ton & Green is equally untenable, viz., that plaintiff cannot recover upon proof of five years possession, paying taxes, etc., unless in his petition he has stated such to be the evidence of his title, etc. This is a novel conception, utterly unsupported by any authority, and has no reason to support it. The reason and authority for the opposite rule is well stated in our original brief, and need not be here repeated. As a rule of pleading, it is well known that a plaintiff is only bound to state that he is the owner of the land in question, and need not set forth the evidences thereof, but may upon trial prove that title by any means allowed in the law, whether by purchase, by gift, by devise, by descent, or by five years possession.

The said supplemental brief falls into another error of fact and law. It contends that Harnage was in possession of part of the Reed league prior to the sale to Wordsworth & Smith by Moss, and that the possession of Smith from 1854, not being under a registered deed, cannot be counted until the sale to Berry, in 1857, "nine months," says the brief, "after Harnage was in possession," etc. Now the facts are, that there is no evidence that Harnage ever was in actual possession of any part of the west quarter of the said league, but that several years after Wordsworth & Smith were in actual possession of the west quarter of the league, he (Harnage) purchased the north end or half of the west three-quarters of the league, and settled upon a part distant from the west quarter thereof. Harnage does not pretend that any part of his improvements were on the west quarter of the league, and of course as he took possession on a different part of the west three-quarters of the league several years after Smith had made his actual improvements on the west quarter of the same he could only claim as against Smith to the extent of his actual improvements, which were not at all upon

Smith's land, but perhaps a mile or more distant. This is the proof, about which there should be no dispute.

MCADOO, J.—This suit is brought in the court below by the appellant, as plaintiff, against the appellees, as defendants, setting up that he is the owner, jointly with defendants, of a portion of the D. Reed headright league of land; that he owns the west quarter of said league, and prays for a partition of the land according to his rights. He alleges that he is and has been in possession of the land claimed by him since about the year 1857, and those under whom he claims were in possession since 1855.

The defendants deny that the plaintiff has title to any of the land claimed by him, but claim the whole land as their own.

This trial presents a curious form of proceeding. In addition to claims of title, both parties rely on possession, and both are in possession of a portion of the land in dispute.

The appellant exhibited a complete chain of title from Reed down to himself—unless one link in the chain be defective, in that the sale purports to have been made by one Pearce, as attorney in fact, when the power of attorney is challenged for sufficiency—a question which will be noticed in another part of this opinion.

The appellees do not present a complete chain of title, but seem to rely on the appellant's admission of their title in the original petition.

The court submitted to the jury certain special issues, eleven in number, none of which were matters to be inquired of by the jury, as they embraced nothing but matters of construction of certain deeds and written instruments, the construction of which was the peculiar province of the court—all of which seemed to amount to

nothing, as the court ignored the findings of the jury entirely in rendering the judgment.

The only questions of fact which properly could have gone to the jury—those affecting possession and the statute of limitations—were entirely ignored, both by the court and the jury. Owing to this fact, we think the case was not, by any means, tried on its merits; and so believing we shall reverse the judgment and remand the cause. But, as the case must be tried again, we deem it proper to pass on the power of attorney before alluded to.

On the seventeenth of April, 1852, Hiram W. Moss, at his then place of residence in Van Buren, State of Arkansas, reciting that he was about to remove to California, made James M. Pearce his attorney in fact, for him and in his name "to ask, demand, sue for, recover and receive all such sum and sums of money, debts, goods, wares, dues, accounts and other demands whatever, which are or may be due, owing, payable and belonging to me, or detained from me by any manner of ways and means whatever, in whose hands soever the same may be found; giving and granting unto my said attorney, by these presents, my whole and full power, strength and authority, in and about the premises, to have, use, and take all lawful ways and means, in my name and for the purposes aforesaid, upon the receipt of any such debts, dues or issues of money, acquittances or other sufficient discharge, for me, and in my name, to make, seal, execute deeds of conveyance and deliver, and generally all and every act or acts, thing or things, device or devices, in the law whatsoever needful and necessary to be done in and about the premises, for me and in my name to do and execute and perform," etc.

We think this instrument falls short of a power to sell land and execute title thereto. It is rather a power to take

than to bind.   (Atwood v. Manning, 7 B. & C., 278.)
That its authority was ample to execute deeds, if neces-
sary in the collection of debts existing, is clear.   If the
evidence showed that there was already a contract for the
sale of the land by Moss to Wordsworth & Smith, then,
on the payment of the purchase money to Pearce, he had,
under the instrument, power to execute the deed.   In the
absence of such proof, in a naked case of sale, we think
his power was incomplete.   There was some showing that
Wordsworth & Smith were possibly in possession before
the sale to them by Pearce, but the record discloses no
previous contract of sale to them.

  Judgment reversed and the cause remanded.

REVERSED AND REMANDED.