THOMAS HENNESSEE ET AL. v. P. G. JOHNSON ET AL.

Delivered May 14, 1896.

1.   Power of Attorney With Interest—Revocation by Death—Land Certificate.

H. executed to B. a power of attorney authorizing him to obtain from the legislature a special headright certificate to which H. was entitled, and to locate and sell the same, and for his services B. was to receive one-half the proceeds in land or cash. B. was further empowered to divide the land equally, if a location was made; and at the same time H. executed a deed conveying to B. one-half of the certificate or the land located thereunder. Held, that the interest of B. vested at once, and did not arise as the product of the execution of the power, and that the power to sell being coupled with an interest was not revoked by the death of H. prior to the issuance of the certificate.

**2. Same—Construction of Power—Location of Certificate.**

The power to sell applied only to the certificate, and did not authorize a sale of the land after its location; but the mere filing of the certificate for location did not, prior to a survey made thereunder, merge the certificate into land and deprive B. of the power to sell.

ERROR from Calhoun.　Tried below before Hon. S. F. GRIMES.

*A. F. Thurmond*, for plaintiffs in error.—1. A power to sell, granted to one as the agent of the grantor, is revoked by the death of the grantor of the power. Brown having been authorized to sell by Hennessee could only execute the power in so far as Hennessee's interest was concerned during the lifetime of Hennessee, at whose death his title to the property, such as he had not parted with (one-half), passed to his heirs, who were not parties to the power of attorney. 1 Parsons on Contracts (7th ed.), 76; Frederick's Appeal, 91 Am. Dec., 159; Cox v. Bray, 28 Texas, 263; 2 Sayles' Real. Est. Laws, art. 992; Hunt v. Rousmanier, 8 Wheat., 170; Primm v. Stewart, 7 Texas, 183; Gardner v. Bank, 10 Law. Rep. Ann., 45.

2. A power of attorney authorizing the grantee in the power to convey a land certificate will not authorize him, unless such power be given him in the instrument, to convey the land upon which such certificate is located. Collins v. Durand, 23 S. W. Rep., 561; Trinity Lumber Co. v. Pinckard, 4 Texas Civ. App., 671.

*Proctors*, for defendants in error.—1. A power of attorney coupled with an interest is not revoked by the death of the donor of such power. Armstrong v. Moore, 59 Texas, 647; Threadgill v. Butler, 60 Texas, 599; Bray v. Aiken, 60 Texas, 688; Runge v. Schleicher, 21 S. W. Rep., 423.

2. The right which Hennessee had to a certificate for one-third of a league of land could be the subject matter of a contract, though such certificate had never issued; the right existed and was not produced by the exercise of the power; the certificate which issued pursuant to the exercise of such power, was but the mere evidence of the right previously existent. Dougherty v. Moon, 59 Texas, 399.

3. Such right could be subject matter of a contract. Robertson v. DuBose, 76 Texas, 8; Johnson v. Newman, 43 Texas, 639.

WILLIAMS, ASSOCIATE JUSTICE.—Plaintiffs in error, heirs of Thomas Hennessee, deceased, sued to recover an undivided half of a tract of 1315 acres patented to said Hennessee August 9, 1854, from defendants, who claimed such half under a conveyance of the certificate, by virtue of which it was patented, made by John Henry Brown, as attorney in fact for said Hennessee. Judgment was rendered in the court below for defendants, which is now before us for review.

On August 1, 1851, Thomas Hennessee was entitled to a certificate from the State for one-third of a league of land, and executed to Brown

an irrevocable power of attorney, stating the authority as follows: "to petition for, ask and receive from the Legislature of this State or other competent authority my headright certificate for one-third of a league of land which I am or by special legislation may be entitled in view of my immigration to this country in the year 1833, and when he shall have obtained said certificate to locate or sell the same for me in my name, and for Brown's services he shall receive in his own right one-half the proceeds in land or cash, it being understood that he is to pay the expenses of locating," etc.   *   *   *   "and I further empower said Brown to divide said land when located equally." (Here follows directions to be observed in making the division.) "And I do hereby waive all legal advantages which this instrument may leave open to him, and do hereby grant, sell, alien and convey said half of my one-third of a league unto him the said Brown, his heirs, etc.,   *   *   *   provided that should said Brown be able to ascertain and establish the fact that I can hold a third of a league on the waters of the Nueces river to which and (sic) supposed I had a headright claim before the year 1836, then the said Brown shall proceed with that tract as above described." At the same time, Hennessee executed a deed conveying to Brown "all right, title, interest, claim and demand in and to one-half of a third of a league of land or a certificate for the same to which I am or may be entitled as a headright for immigrating to Texas in 1833," and giving directions as to partition and making reference to the tract on Nueces river as in the power of attorney. Hennessee died August 12, 1851. Brown procured the certificate which issued February 18, 1852, through authority from the Legislature. On the 15th day of March, 1852, Brown executed a deed conveying the certificate to Henry Beaumont, under whom defendants claim, for a consideration of $177.12, reciting that he did so "for myself and as the agent and partner of Thos. Hennessee," and that the certificate through deed and power of attorney was the joint and legal property of said Hennessee and himself, and that it had been located on Powder Horn Bayou, and signing "John Henry Brown for self and Thomas Hennessee, deceased."

The original field notes on which the patent issued show that the land in controversy is situated on Powder Horn Bayou, but that it and the other tract on which the certificate was located were surveyed May 5, 1853. Brown testified that the certificate was located on the land in controversy, and there is nothing to indicate that there had ever been a location of it made and abandoned on other land than the two tracts for which the patent issued. We think the conclusion from these facts is that, at the date of the power of attorney, Brown had taken preliminary steps to have the lands surveyed, by filing the certificate and application designating such lands, but that no survey had been made, and that it was to this the language in the instrument refers to as a location on Powder Horn Bayou. Brown paid over to a party claiming to represent Hennessee's estate, but of whose authority there is no other evidence, one-half of the money received for the certificate. None of the

heirs received any part of it, but the widow of Hennessee, one of the plaintiffs, knew of the sale to Beaumont as early as 1855.

*Conclusions of Law.*—1. The power of attorney and the deed together created and vested in Brown an interest in the right which Hennessee possessed to receive the certificate. That was a right which was the subject of contract and sale. Johnson v. Newman, 43 Texas, 639; Robertson v. DuBose, 76 Texas, 8. The interest of Brown did not first arise as the product of the exercise of the power, but vested at once by operation of the deed. The consideration for the conveyance was Brown's undertaking to perform the services, and the case is not one in which the interest was to arise only upon performance of the services. Hence we think the power was one coupled with an interest, and was not revoked by Hennessee's death. It was a power to sell the whole of the certificate, and not merely Brown's half of it. The power accompanied the interest given to Brown and was intended to make it effectual by authorizing him to sell the certificate in order to get his share.

2. But we do not think the power was given to Brown to sell the land after that should be acquired. The option was given him to sell the certificate, which was indivisible, or to locate it and acquire land which could be divided, and if he chose the latter course, he was empowered only to make division. This plan runs through both instruments, as is evident from the provisions with reference to the division of the land on Nueces River, should it be secured. Nothing in either instrument manifests an intention that Brown should have power to convey land.

3. As Brown had power to sell the certificate, but not to convey land acquired by virtue of it, the question is, had his power to sell the certificate ceased when he made the deed to Beaumont? We think the power would have ended only when the right to the land was acquired, and that right arose only when all steps had been taken which entitled the parties to a patent. Until that had been done, Brown was at liberty to abandon any file made, or to permit such right as he may have acquired by the acts done to lapse for non-compliance with the law regulating the subject. As he was entrusted with the discretion to decide whether he should sell the certificate or locate it, this necessarily included the power to determine whether he would pursue the claim so as to perfect it into title or to sell the certificate. The latter was not, in our opinion, merged into the land until the owner of it became entitled to the land from the State, and that result would not happen at any point short of a survey of the land. We find no case in which it has been held that the certificate was merged in the land before survey of it had been made. Until that has occurred the right of the holder of the certificate is simply one to acquire the land designated by him, by following up his file and doing the other things which must precede the accrual of his right to a patent. This view is, we think, in harmony with the purpose of the power. The certificate is to be sold or located. What is meant by the latter term reasonably appears from the provis-

ions concerning partition. There could be no partition without the acquisition of title, and, at any stage of the proceedings before title was acquired, Brown was necessarily the sole judge as to whether he should proceed and acquire it, or should stop and sell the certificate.

We conclude that the conveyance of the certificate to Beaumont was authorized by the power, and the judgment of the lower court is affirmed.

*Affirmed.*