HARRY W. RESKY, RESPONDENT, v. JOSEPH A. MEYER, APPELLANT.

Submitted July 10, 1922—Decided November 20, 1922.

An intending purchaser of real estate, procured by a broker, failed to agree with the owner upon the price, and then, without the owner's knowledge, employed a secret agent to negotiate for the property as an independent purchaser. The owner asked the secret agent whether there was any broker in the transaction, and being assured there was not, made a concession in price and contracted the property to the secret agent, who assigned his rights under the contract to the broker's purchaser, and the latter, as assignee, claimed and received the deed. *Held*, that the "sale" so far as the broker was concerned was to the secret agent *qua* principal and that the broker was not entitled to commissions thereon.

On appeal from the Supreme Court which affirmed a judgment of the East Orange District Court.

For the appellant, *Philip J. Schotland.*

For the respondent, *George W. C. McCarter.*

The opinion of the court was delivered by

PARKER, J. This was a suit by a real estate broker for commissions on a sale claimed to have been procured by him. The District Court, in giving judgment for the plaintiff, held that he was the "procuring cause of the sale" and the Supreme Court, without entering into any review of the evidence, held simply that there was evidence from which it was permissible for the District Court to make that finding of fact, and affirmed on that ground. This affirmance was, of course, proper if there was any such evidence; but our examination of the case leads to the conclusion that on a proper legal theory of the cause there was no such evidence.

The case was one of the type where the purchaser, having had his attention called to the property by the broker and failing to secure it at a price satisfactory to himself, has secretly employed an agent to negotiate in the guise of a direct purchaser and thereby induced the owner to scale the price by the approximate amount of the broker's commission, which he believes he has saved by dealing directly with an independent purchaser. The undisputed evidence shows that appellant, Meyer, the owner of a house, was anxious to sell, and that he sent out a sort of circular letter to various brokers, and also advertised in the newspapers; that Resky received one of these circulars and communicated with one Weiss (to whom Meyer ultimately conveyed), and notified Meyer that he had a prospective purchaser. Resky examined the property himself, and later took Weiss to see it by arrangement. Meyer was not there, but members of his family were and showed the house. Resky, for Weiss, offered $8,000, which Meyer, after consideration, declined, but said

he would take $8,250; but Weiss would not give that amount, so the matter seemed. to have stopped at that point. Meyer never saw Weiss, but as his wife showed Weiss the house and Resky testified that he introduced Weiss to Mrs. Meyer, who was there to exhibit the property, the court was entitled to say that Meyer was at least charged with notice that Weiss was Resky's purchaser, and the matter must be dealt with on that basis.

The next phase of the case is that Weiss, according to Resky, told him that "they were going to show it to somebody else to see if it was worth the money," and from that time Resky knew nothing of what was going on until he learned that a deed from Meyer to Weiss was on record. Weiss, called for the plaintiff, says that he sent a friend of his named Solomon "to see if it was worth the money." His evidence is somewhat contradictory, but there is no question that Solomon went to see the place at the instance of Weiss, made an offer as for himself and took a contract of sale from Meyer in his own name, at $7,800. Weiss admits that he did not see Meyer at the time, and does not think Meyer knew he was the one that sent Solomon. This is the sum and substance of the plaintiff's case. Solomon was not produced as a witness and was said to be out of the state. Defendant stated in answer to written interrogatories that he had authorized Resky in writing as his broker, that he had contracted with Solomon and had later conveyed to Weiss. The purchaser's duplicate of the written contract with Solomon was put in evidence on defendant's case. It is made by Meyer and wife with Jacob L. Solomon and covenants to convey to him, "his heirs and assigns," on terms stipulated. It bears the following endorsement, of the same date as the contract: "For value received, we hereby grant, bargain, sell, assign, transfer and set over unto Robert Weiss all our right, title and interest in and to the within agreement. Dated, &c.

"Jacob L. Solomon.
"Esther G. Solomon."

Meyer's uncontradicted testimony about entering into the contract is that he did not know that Solomon was connected in any way with Resky; did not know how he had come to him; that he asked him if it was a direct sale or a broker's sale, and was told a direct sale; that he believed Solomon had come because of his, Meyer's, previous advertisement of the property in the newspapers; that he was particular in asking Solomon about brokers because Solomon was trying to get the lowest price, and on being assured that no commission would be payable out of the proceeds, he scaled his price accordingly, and that the first knowledge he had of the interest of Weiss in the transaction was when he attended to sign the deed and learned that the contract had been assigned to Weiss.

The proposition that a broker, in order to be entitled to commission, must be "the producing cause of the sale" necessarily implies that the purchaser must have been produced by him. In this case the broker produced Weiss; he did not produce Solomon. If the "sale" was made to Weiss the owner is liable; if the "sale" was made to Solomon he is not, even if the property came later to the hands of Weiss. In our view the "sale" in this case, so far as concerns the broker's right to commission, was made to the person with whom the owner consciously contracted for the property, and not to a concealed principal who had employed the ostensible buyer to deceive the owner into the belief that he was dealing without the intervention of any broker. Whatever force may be given to the doctrine of undisclosed principal as affecting the right of such principal to the benefit of a purchase made by his agent—a question not here involved, as the agent had assigned in writing to the principal—we deem it inapplicable to the question here presented.

It has been uniformly held that the words "sell" and "sale" as applied to the relation between the owner of land and a real estate broker working to secure a purchaser of the land, import no more than the act of bringing the owner and purchaser together on terms satisfactory to both, or procuring a purchaser able, ready and willing to buy on the terms fixed

by the seller, so that, for example, the broker cannot, without special authority, bind the owner by a contract of sale in his name. *Morris* v. *Ruddy,* 20 *N. J. Eq.* 236; *Milne* v. *Kleb,* 44 *Id.* 378; *Lindley* v. *Keim,* 54 *Id.* 418, 423; *Scull* v. *Brinton,* 55 *Id.* 489; *Freeman* v. *Van Wagenen,* 90 *N. J. L.* 358; *Yadwin* v. *Arnold,* 94 *Id.* 500.

Parallel with this rule runs the further principle that in the absence of a special agreement, providing otherwise, a real estate broker, acting by virtue of a written agreement under the statute, earns his commission when he secures a buyer on the seller's terms, either as originally propounded or as settled by agreement between the seller and buyer. *Freeman* v. *Van Wagenen,* 90 *N. J. L.* 358; *Steinberg* v. *Mindlin,* 96 *Id.* 206. In both these cases the meaning of the word "sale" as applied to a broker's right to commissions was under consideration, and in the Freeman case, cited and relied on in the Steinberg case, the Supreme Court said (90 *Id.,* at *pp.* 360, 361) : "A clear distinction is made in our cases "between a *sale* and a *conveyance* of land. We agree with what was said in *Lindley* v. *Keim,* 54 *N. J. Eq.* 418 (at *p.* 423), quoting the opinion of Vice Chancellor Pitney, to be found in 30 *Atl. Rep.* 1073, that the words 'sale' and 'sell' in agreements between the owners of land and real estate brokers mean no more than to negotiate a sale by finding a purchaser upon satisfactory terms." So, in *Steinberg* v. *Mindlin, supra,* it was said in this court, in a case where the owner refused to execute a contract of sale unless the broker would scale down his commission: "The matter turns on the meaning to be given to the word 'sold' by itself, and considered with the context. Does it mean 'conveyed' or contracted by binding contract? Or does it mean purchaser and seller agreed on the terms? Ordinarily, it means the last when used in a broker's commission contract." There are many more cases to the same effect, but it is useless to multiply authorities, though the rule is emphasized by such special cases as *Morse* v. *Conley,* 83 *N. J. L.* 416, and *Leschziner* v. *Bauman, Id.* 743, where, by the broker's contract, he was to be entitled to commission only when the "sale" was closed by an actual conveyance.

So, that, reverting to the proposition previously advanced, the "sale," the procurement of which entitles the broker, under any ordinary contract, to his commission, is not the conveyance, but the meeting of the minds of seller and broker's purchaser, or the production by the broker of a purchaser who fulfills the requirements of the seller. Applying this to the present case, Resky would have been entitled to his commission as soon as defendant and Weiss agreed on terms of sale or as soon as Weiss was able and willing to meet Meyer's terms as to price, &c. But this never happened. Meyer and Weiss never agreed on any terms. The uncontradicted evidence shows that Meyer, throughout the affair, having in mind his liability to Resky if he sold to Weiss or anyone introduced by him, or by any broker, refused to abate his price except on the assurance that no broker was concerned in the transaction. As to Solomon, all the evidence shows, as we have said, that Resky did not send him to Meyer and knew nothing of his identity or participation in the affair.

If this fraud, for it amounted to that, had been perpetrated with the connivance of Resky, Meyer would not have been bound, it would seem, to respect the assignment or even to convey to Solomon. *Young* v. *Hughes,* 32 *N. J. Eq.* 372, 378; *Marsh* v. *Buchan,* 46 *Id.* 595; *Steinberger* v. *Young,* 73 *Id.* 586. But the first case also indicates that where the broker is innocent in the matter, the vendor must make the conveyance to the real principal. Hence, Meyer had no other course when confronted with the assignment of his own contract, but to convey to the assignee. But that created no obligation to pay the commission. His relations with Weiss in that regard were those of an owner with his purchaser's assignee, and not those of an owner with one who had previously been introduced as a prospective purchaser by the broker. Whether Solomon had taken his deed and then conveyed over to Weiss, or merely assigned the contract and let Weiss call for a deed as assignee, the effect was the same. If there had been any evidence to show that Meyer knew or had reason to believe, before the contract of sale was

executed, that Solomon was acting for Weiss and not for himself, the case would be different; but there is no such evidence. The non-liability of the honest owner to the broker in such a case is held by such authority as *Ritch* v. *Robertson*, 93 *Conn.* 459; 106 *Atl. Rep.* 509, annotated in 7 *A. L. R.* 81, and intimated in *Gormley* v. *Dangel*, 214 *Mass.* 5; 100 *N. E. Rep.* 1084, and, as we think, with entire propriety.

These considerations lead to a reversal of the judgment under review.

*For affirmance* — THE CHANCELLOR, TRENCHARD, MINTURN, JJ. 3.

*For reversal*—THE CHIEF JUSTICE, PARKER, BERGEN, KALISCH, WHITE, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 9.