## REISER v. JENNINGS.

No. 5180.

Court of Civil Appeals of Texas. Amarillo.

July 1, 1940.

Rehearing Denied Sept. 9, 1940.

W. H. Russell, of Hereford, for appellant.

Aldridge & Aldridge, of Farwell, for appellee.

FOLLEY, Justice.

This suit was filed by the appellee, C. C. Jennings, against the appellant, E. J. Reiser, to recover damages for the alleged breach of a contract made by Charley Lunsford, purportedly as the agent of the appellant. This contract was for the conveyance of 320 acres of land in Parmer County, Texas, from the appellant through his purported agent to the appellee. In a trial before a jury judgment was rendered for the appellee in the sum of $1,645.79.

The appellant attacks the judgment upon various grounds, the principal of which are: (1) That the court should have sustained his general demurrer to appellee's petition; (2) that the court should have given a peremptory instruction in his favor; and (3) that the court should have permitted him to file a trial amendment denying the agency of Lunsford.

On April 11, 1939, Reiser was the owner of the 320 acres of land in Parmer County against which there was an indebtedness of about $4,000 secured by a lien. On this date Reiser listed the land for sale with Lunsford, who carried on a real estate business at Friona, Texas, under the name of "Real Estate & Livestock Exchange". The written instrument under which the listing was made was as follows:

"Real Estate & Livestock Exchange
    "Chas. Lunsford, Prop.
        "Friona, Texas. 4/11—1939.

"I hereby list the following property for sale or trade with Real Estate & Livestock Exchange of Friona, Texas, 320 acres, Sec. No. East 1/2 of Sec. 13, located 18 miles in N W. direction from the town of Friona, Tex, in Parmer Co., County. Above listed property is improved as follows: 320 acres cultivated ——— acres in grass. Well and windmill, mill, no water mill, water ———, house ———, rooms ———, barn ———, sheds and out buildings ———, price $18.50 per acre ———, cash balance ———. I will pay 5% commission on sale or 2½% commission on exchange of property on delivery of title unless otherwise agreed. Not on loan. Remarks: This place has 224 acres of wheat, all goes with it at this price up till June 1, 1939. I am also listing this land for oil and gas lease. I want $400.00 Dollars for the 320 acres oil lease, with 50cts. rental per acre lease. I am not to pay any commission on oil lease.

"Signed  E. J. Reiser
"Witnesses
  "M. L. Phippin
  "Chas. Lunsford"

On May 27, 1939, Lunsford, purporting to act as agent for Reiser, entered into a written contract with the appellee Jennings whereby the appellant through his purported agent agreed to sell, and the appellee to purchase, the 320 acres of land at the price of $18.50 per acre, the appellee agreeing to assume the indebtedness against the land and to pay the balance in cash upon the delivery of the deed conveying the land to him. This contract further provided that Reiser would furnish an abstract of title which Jennings would have ten days to examine and report objections, and in the event title should not be merchantable Reiser would have six months in which to cure the objections. It was also stipulated that Jennings would receive the wheat crop growing on the land; that he would be entitled to immediate possession thereof; that in the event the transaction had not been completed at the time the wheat was harvested the net proceeds of the sale of such wheat should be placed in escrow in the Security State Bank of Farwell, Texas, pending the completion of the transaction; and that when finally completed Jennings should be entitled to the wheat or the proceeds thereof. It was further stipulated that Jennings had placed $500 in escrow in the bank to be applied as part of the purchase price of the land when the transaction was completed and to be delivered to Reiser as liquidated damages in the event the sale was not completed due to the default of Jennings. This instrument was signed by Jennings and by Lunsford, the latter purportedly as the agent of Reiser.

The appellee alleged that the appellant did in writing, and verbally, make, constitute and designate the said Charley Lunsford as his agent to sell the land at an agreed and stipulated sum of $18.50 per acre; that said written contract and designation as above set out, which was copied in appellee's pleadings, was made with Charley Lunsford in the name of "Real Estate & Livestock Exchange" which was an assumed or firm name of Charley Lunsford; that concurrently with the execution and delivery of said instrument in writing Reiser did verbally authorize Lunsford to sell

said land, to enter into contracts to sell it in behalf of Reiser as his agent at the sum of $18.50 per acre; that it was understood that the purchaser would assume the indebtedness against the land and pay the balance in cash upon delivery of the deed; that Lunsford was authorized to sell said land as agent for Reiser upon the terms aforesaid and was impliedly authorized to enter into contracts therefor and to do each and everything necessary to carry out the purpose of said agency in perfecting the sale; that Lunsford was authorized to sell the land at any time prior to June 1, 1939; that in pursuance to said contract and authorization Lunsford did on or about May 27, 1939, enter into a contract in writing with Jennings wherein Reiser, acting through such agent, did agree to sell and convey to Jennings the land at $18.50 per acre; and that said agent was authorized to make such sale and impliedly authorized to enter into such contract.

The appellant filed only a general demurrer and a general denial. The agency asserted by the appellee was not denied under oath. In this connection, however, the appellant asserts that under the appellee's pleading and under the evidence no sworn denial was necessary to defeat the recovery of the appellee.

We think the agency pleaded by the appellee, a resume of which is above set out, is susceptible of two distinct interpretations, one being that the agent Lunsford was expressly authorized by the appellant to execute the contract for the sale of the land, and the other that by virtue of the agent's authority to "sell" the land it impliedly followed that he was also authorized to enter into a contract therefor on behalf of his principal.

Under the construction placed upon section 8 of article 2010, R.C.S. of 1925, with reference to sworn denials of instruments executed by a party or by his authority upon which a suit is predicated, in the absence of a sworn denial the authority of the agent need not be proved and is not an issuable fact when the same is expressly asserted in the pleadings of the party relying thereon. Hunt et al. v. Siemers, 22 Tex.Civ.App. 94, 53 S.W. 387, writ denied; National Guaranty Fire Ins. Co. v. King, Tex.Civ.App., 24 S.W.2d 501, writ refused. In the instant case, however, the authority of the agent to execute the sale contract is not expressly, at least not clearly, asserted by the appellee, but on the contrary, the pleading is strongly susceptible of the construction that such power is necessarily implied under the general allegation of the power to "sell".

In 12 C.J.S., Brokers, 63, § 20, on the significance of the authority given an agent to "sell" real estate, we find this general rule: "Some courts have taken the view that where a broker is employed 'to sell' property power is given to make a binding contract of sale. Most courts, however, sustain the view that the use of the words 'for sale,' 'to sell,' and the like, in a broker's contract of employment, amount to nothing more than an employment to find a purchaser and to present him to the owner or to conduct negotiations with him, and does not of itself give the broker any authority to make a binding contract of sale on behalf of the owner."

The great weight of the authority seems inclined to the view expressed in the above quotation to the effect that the power to "sell" does not authorize an agent to enter into a binding contract of sale but amounts to no more than employment to find a purchaser. This rule seems to have been adopted by the courts of this jurisdiction. Donnan v. Adams, 30 Tex.Civ.App. 615, 71 S.W. 580, writ denied, and authorities therein cited and discussed; Collins et al. v. Durward et al., 4 Tex.Civ.App. 339, 23 S.W. 561; Hennessee et al. v. Johnson et al., 13 Tex.Civ.App. 530; 36 S.W. 774; Berry v. Harnage et al., 39 Tex. 638; La Beaume et al. v. Smith, Albin & Peay, Tex. Civ.App., 247 S.W. 623; J. B. Watkins Land Mortgage Company v. Campbell et al., 100 Tex. 542, 101 S.W. 1078.

In Eisenhower v. Brown, 4 S.W.2d 627, 628, in discussing the above rule, Justice Smith of the San Antonio Court of Civil Appeals said: "The general rule more generally accepted seems to be that unless the power thereto is clearly given by the terms of his contract of employment, a broker has no authority to enter into a contract of sale of land binding upon his principal; that 'the ordinary authority of a real estate broker employed to sell real estate is merely to find a purchaser who is ready, able, and willing to enter into a contract on the terms specified by, or acceptable to, the principal, and in the absence of such special authorization he has no authority to enter into a contract of

sale, or to sell and convey, binding upon the owner.' 9. C.J. 526, § 28. Mr. Mechem, in his work on Agency, states the general rule to be, that 'authority to sell real estate must ordinarily be conferred in clear and direct language; for, although there are cases in which it may arise by implication, it is not lightly to be inferred from express power to do other acts, or brought within the operation of more general terms.' Mechem Agcy. §§ 802, 797, 798."

Since the pleading of the appellee is susceptible to the two constructions above noted, in disposing of the case upon the merits, we think it is necessary to look to the testimony on the issue in order to determine the real meaning of the allegations. From the testimony of the agent Lunsford, which incidentally is the only evidence introduced on the issue, we find that Reiser told Lunsford to "go ahead and sell" the land; that Reiser told him how much he wanted for the land and how the purchase price was to be paid; that Reiser told Lunsford to sell it on those terms; that he would pay Lunsford commission on his equity in the land but not on the indebtedness against it; that Lunsford wrote down on the listing instrument just what Reiser told him; and that such listing contract was Lunsford's only authority to sell the land. This testimony falls far short of showing either an express or an implied authority to enter into a written contract to sell the land. Under the above authorities it amounts to no more than the employment of an agent to find a purchaser ready, willing and able to enter into a contract on the terms specified by the appellant. We therefore think the pleadings of the appellee, when construed in the light of the testimony, simply assert an authority in the agent to find a purchaser. The pleading being susceptible of the interpretations placed upon it by the appellee was not, we think, subject to a general demurrer, but upon the introduction of the testimony which clarified the meaning of the allegations and restricted the authority of the agent to that only of finding a purchaser, it is our opinion that it was error to render a judgment in favor of the appellee based upon such pleading and the evidence.

Under the peculiar facts and circumstances of this case we are of the further opinion that upon the refusal of the court to direct a verdict for the appellant at the conclusion of the appellee's testimony the court erred in refusing to permit the appellant to file a trial amendment denying under oath the agency of Lunsford. In making this holding we are not unmindful of the rigid rule that the allowance of a trial amendment lies wholly within the sound discretion of the trial court and that his action in such matter is subject to review only upon a clear showing of abuse of such discretion. 33 Tex. Jur. 521, para. 89. We think it was not unreasonable for the appellant to have interpreted the pleading of the appellee in such manner that a sworn denial of the agency was unnecessary, and particularly is this true if he knew beforehand, and we presume he did, what the testimony of the agent would be upon the issue of his authority. There certainly was nothing in the written listing contract by which a reasonable presumption might arise that the agent was empowered to enter into a sales contract with anyone, nor does any such implication arise from the testimony or from any past conduct or relationship between the parties. At the time the request was made to file the trial amendment there was insufficient evidence before the court to establish the authority of the agent to execute the contract, and but for the rule that the absence of a sworn denial forecloses the issue in favor of the agency, the appellant would have been entitled to a peremptory instruction. In refusing the appellant the right to file such amendment the court accepted the construction of appellee's pleading most favorable to the appellee when he could, with a great deal more logic and in keeping with the uncontroverted testimony, have adopted the interpretation of the pleadings which would have excluded the authority of the agent to contract for the sale of the land. By the proffered trial amendment the appellant was not injecting any new matter into the law suit nor could it have been a surprise to the appellee or otherwise have prejudiced his rights. On the contrary the appellant was merely attempting to escape the binding effect of the court's interpretation of the pleadings which he had failed to anticipate for lack of no diligence upon his part. By refusing to allow the filing of the amendment the court was, in effect, promoting a recovery upon testimony wholly insufficient as a basis therefor and, under the record as it then stood, permitted a miscarriage of justice.

In Sorenson v. City Nat. Bank, Tex.Civ. App., 273 S.W. 638, 639, where there was a refusal of permission to file an amendment before announcement of ready, it is stated: "The allowance of amendments to pleading is within the discretion of the court, but that discretion should never be exercised in such manner as to defeat justice, and we think the court was in error in denying appellee leave to amend its answer before it had announced ready. Boren v. Billington, 82 Tex. 137, 18 S.W. 101; Shelton v. Berry, 19 Tex. 154, 70 Am.Dec. 326."

In Williams v. Creighton et al., Tex. Civ.App., 93 S.W.2d 195, 196, in discussing the refusal of the trial court to permit the filing of an amendment after announcement of ready under circumstances similar to those of the instant case, it is said: "If we err in the view the variance was not fatal, then we are of the further opinion it was error to refuse the plaintiff leave to file the requested trial amendment. The allowance of such amendments rests in the sound discretion of the court, but it should not be refused when such refusal results in a miscarriage of justice and the granting of same could not operate to surprise or otherwise prejudice the opposing side."

In the early case of Whitehead et al. v. Foley et al., 28 Tex. 1, 10, in discussing the propriety of allowing trial amendments after announcements of ready and during the trial of a case, the Supreme Court of this State said: "It is insisted, however, that the disclaimer was presented as an amendment, and the court was forbidden by the statute from permitting this to be done after the parties had announced themselves ready for trial. The language of the statute (O. & W. Dig., art. 434), if technically construed, may admit of this construction. But it certainly never has been supposed that the district courts cannot permit parties, if necessary to accomplish the ends of justice, to withdraw an announcement at any time before a case is submitted to the jury. And if this be done, it is undeniable that the pleadings may then be amended; so also, after a verdict, a new trial may be granted for the mere purpose of permitting an amendment. Was it the purpose of the legislature to forbid the court doing directly what may thus be circuitously accomplished? It can hardly be thought that this is the true meaning or interpretation of the statute. It is more reasonable to conclude, that the object of the law was to prescribe a general rule, under which parties should have the absolute right of amendment before they announce themselves ready for trial and not thereafter, but not to take from the court the power of making any order during the progress of the trial, which might be found necessary for more certainly and speedily attaining the justice of the case."

The rule announced in the White v. Foley case was reaffirmed by the same court in Parker v. Spencer, 61 Tex. 155, 164, in the following language: "In Whitehead v. Foley, 28 Tex. [1] 10, it was held that a general rule is prescribed by that statute, to the effect that, after announcement, the parties are not entitled, as a matter of right, to amend their pleadings, but that it is in the power of the court to allow such amendments after that time as might become necessary to attain the ends of justice."

In a still later case, Radam v. Capital Microbe Destroyer Co. et al., 81 Tex. 122, 16 S.W. 990, 991, 26 Am.St.Rep. 783, the Supreme Court further said: "The Revised Statutes provide that pleadings may be amended under leave of the court before the parties announce ready for trial, 'and not thereafter.' Rev.St. art. 1192. Yet it has been held that after such announcement the court may allow amendments that may seem necessary to the ends of justice."

Under these and other authorities on the subject, we think the trial court abused his discretion in refusing appellant permission to file a sworn denial of the power of the agent to enter into a written contract of sale. Jackson et al. v. Blair, Tex.Civ. App., 165 S.W. 522, writ refused; 33 Tex. Jur. 523, para. 91-92.

The appellant asserts that judgment should be rendered herein for him because of the allegation of appellee that by the terms of the agency contract Lunsford was authorized to sell the land at any time prior to June 1, 1939. The appellant contends that this allegation precludes a sale to be completed after such date and that this allegation, coupled with the fact that the sale was not completed before June 1, 1939, but that only a contract was executed therefor, destroys any right of recovery upon the part of the appellee. We think a sufficient answer to this con-

tention is that the most reasonable construction of this allegation is that the agent had until June 1, 1939 to find a purchaser, which he did within such period. We think the case of Shirley v. Coffin et al., 103 Tex. 537, 131 S.W. 404, relied upon by the appellant in this connection, is clearly distinguishable from the instant case in that in the former case the employment contemplated the making of a completed sale and not the mere finding of a purchaser within the time limit. Such is not true in the case before us. In Black's Law Dictionary, Third Edition, page 1577, in defining the word "Sale" as applied to the relation between a real estate broker and a landowner, it is said: "'Sale', as applied to relation between landowner and real estate broker working to secure purchaser of land, means procuring purchaser able, ready and willing to buy on terms fixed by seller. Resky v. Meyer, 98 N.J.L. 168, 119 A. 97, 98; Walker v. Russell, 240 Mass. 386, 134 N. E. 388, 390; T. W. Sandford & Co. v. Waring, 201 Ky. 169, 256 S.W. 9, 10; Humphries v. Smith, 5 Ga.App. 340 (1), 63 S.E. 248."

██ The appellant further asserts that we should render judgment for him because the $500 deposit made by the appellee as above stated, with the stipulation that it should be delivered to the appellant as liquidated damages in the event of the default of the appellee, results in a mere option contract and is not a sale.

In such stipulation there was no agreement that the appellant should accept such sum in full satisfaction of the breach of the contract nor does such stipulation preclude a suit for specific performance upon the part of the purchaser. Moreover, if, as indicated in the stipulation, it was the intention of the parties that the money should be placed in escrow, not for the purpose of allowing the purchaser the election of paying the money or performing the contract, but merely to secure the performance of the obligation, specific performance would not be denied the vendor. Redwine v. Hudman, 104 Tex. 21, 133 S.W. 426; Texlouana Producing & Refining Co. v. Wall, Tex. Com. App., 257 S.W. 875. Under these circumstances we think the contract, if binding at all, was more than a mere option contract. Moss & Raley v. Wren, 102 Tex. 567, 120 S.W. 847; Id., 102 Tex. 567, 113 S.W. 739; Id., Tex.Civ.App., 118 S.W. 149; Simpson v. Eardley, Tex.Civ.App., 137 S. W. 378, writ denied; Henderson & Grant v. Gilbert; Tex.Civ.App., 171 S.W. 304; La Beaume et al. v. Smith, Albin & Peay, supra; Bourland et al. v. Huffhines, Tex. Civ.App., 244 S.W. 847, and authorities cited. Furthermore, since the case was not fully developed either by the pleadings, or by the evidence, we think justice will best be subserved to remand the case for a new trial.

For the errors pointed out the judgment is reversed and the cause remanded.