GILBERT M. RITCH vs. CAROLINE ROBERTSON.

Third Judicial District; New Haven, January Term, 1919.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

The defendant authorized the plaintiff, a real-estate broker, to sell her property for $6,500, upon a commission of two and one half per cent. The broker, and later the defendant herself, negotiated unsuccessfully with one R, who refused to pay more than $5,500, while the defendant reduced her price to $6,000. Finally E made an offer of $5,750, and the defendant, before accepting it, informed R of the amount, and expressed her willingness to let him have the

Ritch *v.* Robertson.

property for $5,800 if he still wished to buy, but *R* declined, where-upon she accepted *E's* offer and bound herself in writing accord-ingly. At this time she supposed *E* was acting for himself, but he was in fact the tool of *R* who desired the property, and thought by this scheme to obtain it for less than if he bought it directly. The plaintiff had nothing to do with the sale to *E* and was ignorant of it until it had been consummated; nor did he know of the secret arrangement between *R* and *E*. Upon appeal from a judgment for the plaintiff it was *held:*—   .

1. That the plaintiff could not recover upon the ground that he was the procuring cause of the sale to *E*, since no such claim was made in the complaint, which proceeded upon the theory of a sale to *R*, and moreover was contradicted by the finding.

2. That the principles of undisclosed agency invoked by the plaintiff in order to make the sale to *E* in legal effect a sale to *R*, were unavail-ing, since they had no application where they would work injury to the other contracting party, as they would, if applied in the present case, by compelling the payment of a commission by the defendant from which she would otherwise be free.

3. That were the sale to be treated in legal effect as one to *R* because he afterward obtained title to the property, the plaintiff would nec-essarily be held to have adopted the means or method by which *R* secured the property—a secret method antagonistic to the interests of the plaintiff's client, and therefore fatal to the recovery of a commission by the plaintiff.

4. That *R's* conduct and his express declination to buy the property after being informed of *E's* offer, would have estopped him from thereafter insisting, as against the defendant, that he was the real principal in the purchase.

The right of a broker to sell real estate placed in his hands is not exclu-sive unless such authority be conferred in unequivocal terms or by necessary implication.                    *

To entitle a broker to his commission, it must appear that he produced a person who was ready, able and willing both to accept and live up to the terms offered by the owner of the property.

A broker cannot put himself in a position antagonistic to his client's interest.

The question whether a broker was the procuring cause of a sale is one that may be reviewed by this court upon appeal, where all the subordinate facts from which the ultimate conclusion is to be drawn are detailed in the finding.

In the absence of direct communication between the broker and the purchaser, it must be shown affirmatively that the purchaser was induced to negotiate through the means employed by the broker for that purpose.

Ordinarily the principal of an undisclosed agent may appear in his true character and claim all the benefits of the contract from the other

Ritch *v.* Robertson.

contracting party; but this is not so when the application of the rule would work an injury to the other party.

A broker cannot benefit by an imposition upon his client by the very person whose conduct he must adopt in order to show any sale whatever.

A property owner cannot escape the payment of a broker's commission because he sees fit to sell at a price less than that to which he limited the broker, nor merely because he made the sale in person.

The cases of *Lincoln* v. *McClatchie*, 36 Conn. 136, and *Butler* v. *Ouwelant*, 90 Conn. 434, explained and distinguished.

Argued January 21st—decided May 2d, 1919.

ACTION by a real-estate broker to recover a commission for procuring a sale of the defendant's property, brought to and tried by the Court of Common Pleas in Fairfield County, *Booth, J.;* facts found and judgment rendered for the plaintiff for $165, and appeal by the defendant. *Error; judgment to be entered for defendant.*

The defendant employed the plaintiff to sell certain real estate for $6,500, for a commission of two and a half per cent. The plaintiff attempted to sell to one Robertson, who refused to pay more than $5,500. The defendant then authorized a sale for $6,000, but Robertson still refused to pay more than $5,500. Thereupon, at the request of the defendant, she was, by the plaintiff, introduced to Robertson under the agreement that if she sold to him she would pay the plaintiff his commission. The defendant was unable to effect a sale to Robertson. Robertson, believing that a third party could buy cheaper than he could, arranged with one Ehlers to buy for not more than $5,750, and then deed the property to him, agreeing to furnish Ehlers the money. Ehlers then attempted to buy the property of the defendant, which, after considerable negotiation, he succeeded in doing, for $5,750. The defendant supposed and believed that Ehlers was acting for himself and had no connection with or relation to either Robertson or the plaintiff, and before closing

with Ehlers she called Robertson on the telephone, informed him of the offer and proposed to sell to him for $5,800, if he still desired to buy. Robertson, knowing Ehlers made the offer, declined to buy, and the defendant then entered into a written agreement to sell to Ehlers, who also paid something down. This was about August 2d, 1915.

The defendant, some time after she had made her contract with Ehlers and before September 8th, 1915, learned of the arrangement between Ehlers and Robertson. She executed and delivered her deed to Ehlers September 20th, 1915, and at the same time Ehlers executed and delivered his deed of the same property to Robertson. Robertson furnished Ehlers the money necessary to complete the transaction. Both deeds of the property were, at the request of the defendant, prepared by her attorney, after she learned of the Ehlers-Robertson arrangement and prior to the day of delivery. The plaintiff knew nothing of the negotiations between Ehlers and the defendant, nor does it appear that he knew of the arrangement between Ehlers and Robertson until after the sale was completed and the deeds passed. The defendant had not withdrawn the property from the hands of the plaintiff prior to September 20th, 1915.

Upon this statement of facts, slightly condensed from the record, the trial court rendered judgment for the plaintiff to recover his commission. The defendant appealed.

*William C. Rungee* and *George E. Beers*, for the appellant (defendant).

*Walter M. Anderson*, for the appellee (plaintiff).

GAGER, J. The contract did not give the plaintiff the exclusive right of sale. To have this effect the right

Ritch *v.* Robertson.

must be given to the broker in unequivocal terms or by necessary implication. *Hungerford* v. *Hicks*, 39 Conn. 259; 4 R. C. L. 259; 44 L. R. A. 344 n; 24 L. R. A. (N. S.) 279 n. This court has many times stated what is necessary to entitle a broker to his commission. In the recent case of *Butler* v. *Ouwelant*, 90 Conn. 434, 97 Atl. 310, the court, citing a number of earlier cases, said (p. 438): "To entitle the plaintiffs, as brokers, to the compensation which they claim to recover in this action, it should appear that they produced a person who was ready, able and willing, both to accept and live up to the terms offered by the defendant."

It is also well settled that a broker cannot put himself in a position antagonistic to his principal's interest. *Ebert* v. *Haskell*, 217 Mass. 209, 211, 104 N. E. 556; *Veasey* v. *Carson*, 177 Mass. 117, 58 N. E. 177, 53 L. R. A. 241, and note.

The appeal turns, substantially, upon the answer to the question, Was the plaintiff the procuring cause of the sale? The trial court found, as a conclusion of fact from subordinate facts set forth in the finding, that the plaintiff was the procuring cause. This conclusion may be reviewed on appeal. *Hoadley* v. *Savings Bank of Danbury*, 71 Conn. 599, 42 Atl. 667, 44 L. R. A. 321; *Seward* v. *Seward & Son Co.*, 91 Conn. 190, 99 Atl. 887. Robertson appears to have been the only person with whom the plaintiff had negotiations. After twice failing to sell to him, the plaintiff and the defendant agreed that the defendant should be introduced to Robertson, and that if she succeeded in effecting a sale to him the plaintiff should have his commission. The defendant also failed to make the sale to Robertson, and negotiations with Robertson were at a standstill. It appears, however, that Robertson really wanted the property, and, entirely without the knowledge of either the plaintiff or defendant, put up a scheme by which

he hoped ultimately to get the property at a less price than that for which he could buy it directly. He agreed with one Ehlers, hitherto unknown to both plaintiff and defendant as a possible purchaser, that Ehlers should buy the property, if possible, at a price as an original, independent purchaser, and then convey to him. Ehlers offered $5,750, but the defendant, with the utmost good faith, both to the plaintiff and to Robertson called up Robertson before closing with Ehlers and again offered him the property for $5,800. He declined to buy. The defendant's good faith to the plaintiff is clear when it is observed that a sale to Robertson for $5,800, less commission, would have meant a loss to the defendant of $95 as against the sale to Ehlers with no commission. Upon the refusal of Robertson to buy, the defendant made her contract with Ehlers, and became bound to convey to him. If bound to Ehlers, information subsequently obtained by her of Robertson's scheme is immaterial. She had no contract with Robertson. Knowing that Ehlers had made her an offer, Robertson had expressly declined to buy upon notice from the defendant and upon her offer still to sell to him before closing with Ehlers. Upon the plainest principles of estoppel, Robertson could not thereafter, as against the defendant, insist that he was the real principal. *East Haddam Bank* v. *Shailor*, 20 Conn. 18; 31 Cyc. 1234.

Yet the plaintiff claims that because pursuant to the secret agreement between Ehlers and Robertson the property was immediately conveyed by Ehlers to Robertson, the defendant should be held liable for commission as upon a sale by her to Robertson under the modified agreement. The finding is clear that the plaintiff did not in fact procure Ehlers as a purchaser. The plaintiff in no way intervened so as to bring Ehlers' attention to the property. But the plaintiff claims that

because he had been in negotiations with Robertson and Robertson made the contract with Ehlers to buy, therefore the plaintiff was the procuring cause of Ehlers' purchase. The plaintiff had nothing to do with the sale in fact made, nor did he know of it until after the sale had been consummated. Neither the plaintiff nor Robertson introduced Ehlers to the defendant. Ehlers approached the defendant entirely as an original, independent purchaser and secured his contract in that guise. The general rule is stated in 9 Corpus Juris, 614, in this way: "The facts that a person with whom the broker unsuccessfully negotiated for a sale called the attention of another to the property, and that the other finally bought it, do not give the broker a right to a commission." This rule is based upon the well-established distinction between what the books call the *causa causans* and the *causa sine qua non.* The cases are numerous. We mention *Burchell* v. *Gowrie and Blockhouse Collieries,* L. R. (1910) App. Cas. 614, 624; *Imrie* v. *Wilson,* 3 Dominion L. R. 826. In *Gleason* v. *Nelson,* 162 Mass. 245, 249, 38 N. E. 497, it is said: "Where there has been no direct communication between the broker and the purchaser, it must be shown affirmatively that the latter was induced to enter into the negotiations which resulted in the purchase through the means employed by the broker for that purpose." We also cite *Johnson* v. *Seidel,* 150 Pa. St. 396, 24 Atl. 687; *Baumgartel* v. *Hoyne,* 54 Ill. App. 496. See also the citations in note d, 44 L. R. A. 333.

Perhaps we should here notice our own case of *Lincoln* v. *McClatchie,* 36 Conn. 136. Here the broker had been engaged to sell. Burdick was looking for a house. His friend Goodwin, knowing this, and seeing the broker's advertisement, interviewed the broker and reported to Burdick who requested Goodwin to examine the house and report to him. Goodwin did so and

Burdick then examined the house, negotiated directly with the owner, and bought the property without any personal interview or dealing with the broker. Before his purchase Burdick was informed by Goodwin that the broker had the property for sale. In the Superior Court Judge Loomis decided for the defendant. On appeal this court held that the broker was entitled to his commission, on the ground that on these facts the principle *qui facit per alium facit per se,* applied, and that Burdick obtained his information from the plaintiff through Goodwin who was in fact the messenger and agent of Burdick. The facts clearly warranted the assumption of such an agency. The felt necessity of invoking the doctrine of agency, but confirms the general rule stated above. *Butler* v. *Ouwelant,* 90 Conn. 434, 97 Atl. 310, is decided upon the theory that the defendant, with knowledge of what the plaintiff broker had done, combined with a third party in the attempt unjustly to deprive the plaintiff of his commission. There is nothing in the present case to suggest in the slightest degree that the defendant desired or planned to avoid paying a commission. Directly the contrary is true.

The complaint is based upon a sale by the defendant to Robertson, and the finding shows the final arrangement between the plaintiff and defendant was based on the possible ability of the defendant to effect a sale to Robertson.

The plaintiff argues that the facts show that Ehlers was the undisclosed agent of Robertson. Whether the arrangement made between Robertson and Ehlers was a contract of purchase and sale, or a contract of agency, it is not necessary now to decide. If it was a contract of purchase and sale, then clearly the plaintiff would not be entitled to recover, for the sale would have been to Ehlers and not to Robertson. If, on the contrary,

Ehlers was in fact the undisclosed agent of Robertson, still the plaintiff cannot recover. The case is not one of agent for an undisclosed principal, that is, where the seller is aware that he is dealing with one who is acting as an agent, only the principal being undisclosed. In such case the law seems clear that either the agent or the principal may sue upon the contract. *Rhoades* v. *Blackiston,* 106 Mass. 334, a case where the agent confessedly acted as such to the knowledge of the vendee, so states the general rule. In the present case the fact of the agency was not only undisclosed, but the defendant upon particular inquiry was, by the very person now claimed to have been the principal, justifiably led to believe there was no agency in fact, and thereupon made her sale, as she rightfully supposed, to a third person free of liability for commission which she would have had to pay had she sold, as in truth she unsuccessfully attempted, to Robertson himself.

This, however, is not a case of one acting as agent, but not disclosing the principal. If we assume that as between Ehlers and Robertson the relation of principal and agent existed, not only was this fact not known to the defendant, but was purposely concealed from her by both Ehlers and Robertson. So that the most that the plaintiff can claim is that this is a case of undisclosed agency. The difference between these two situations must be kept in mind in determining the liability and rights of the vendor. Furthermore, we are not now deciding the rights of Robertson against Ehlers. The rule of law as frequently stated with reference to the rights of an undisclosed principal against the vendee, must be critically examined to determine whether the rule as stated is applied with reference to an undisclosed agency, or to a case of disclosed agency but undisclosed principal. *Rhoades* v. *Blackiston,* 106 Mass. 334, is an illustration. While it is generally true

that a principal of an undisclosed agent may appear in his true character and claim all the benefits of the contract from the other contracting party, yet this rule is never applied when to follow it would work an injury to the other contracting party. In *Barry* v. *Page,* 76 Mass. (10 Gray) 398, cited with approval in *Sullivan* v. *Shailor,* 70 Conn. 733, 737, 40 Atl. 1054, it is said: "As the contract of an agent is in law the contract of the principal, the latter may come forward and sue thereon, although at the time the contract was made the agent acted as and appeared to be the principal. There is a qualification of the rule, by which it is held that when a contract has been made for an undisclosed principal, who permits his agent to act as apparent principal in the transaction, the right of the former to intervene and bring suit in his own name is not allowed in any way to affect or impair the right of the other contracting party, but he will in such case be let in to all the equities, set-offs and other defenses to which he would have been entitled, if the action had been brought in the name of the agent." As stated in 21 R. C. L. 898, the principal's right to claim the benefits of the contract is recognized "so far as he can do so without injury to that other by the substitution of himself for his agent." Numerous cases are cited in the note. It needs no argument to show that if Robertson were permitted to substitute himself for his assumed agent under the circumstances of this case, thereby making the sale one from the defendant direct to him and to bring the case within the allegations of the complaint and within the terms of the final brokerage contract between the plaintiff and defendant, this would be to the harm of the defendant to the extent of the commission on the sale. The defendant was thus under no obligation to Robertson under her contract with Ehlers, and Robertson could not have

enforced Ehlers' contract with the defendant as his own.
It is said in Mechem on Agency (2d Ed.) § 2070, if the
vendor has "dealt with the agent as in fact the prin-
cipal and upon terms in a written contract which ex-
clude the existence of any other principal," the un-
disclosed principal is not a party to the contract and
cannot enforce it. To do so would contradict the writ-
ing. The finding does not set out the terms of the
written contract, but does show there was such a con-
tract, and the circumstances irresistibly point to the
conclusion that no agency was suggested and by Rob-
ertson's own statement that certainly he was not con-
nected with it. It is, then, clear that upon the settled
principles of undisclosed agency the sale was not to
Robertson, and that the plaintiff cannot recover on
the theory that he was the procuring cause of a sale
to Robertson.

There is another point of view which shows that the
plaintiff cannot recover. Should it still be held that
the defendant in law, though certainly not in fact,
sold to Robertson because Robertson subsequently
obtained title to the property, the plaintiff must, as mat-
ter of law, be held to have adopted the method by
which Robertson subsequently obtained title. This
method was, as we have seen, by secretly putting for-
ward a third party as a purchaser in opposition to
Robertson, to obtain the property at a less price than
Robertson believed he could buy it for, and by adopting
Robertson's statement to the defendant upon specific
inquiry by the defendant if he still wanted the prop-
erty, that he did not want to buy. To be sure the
plaintiff did not in fact do this, but he must adopt
this conduct, antagonistic to the interest of his client,
to establish that he was the procuring cause of the
sale the defendant in fact made. This he will not be
allowed to do. To compel the defendant to pay com-

mission on a sale so obtained, when she, though unsucessfully, took every possible means to make a sale, as she supposed, which would entitle the plaintiff to his commission, would inflict an undeserved loss upon her. The sale in fact was made through concealing the identity of the real purchaser and so leading the defendant to sell at a less price. *Veasey* v. *Carson,* 177 Mass. 117, 58 N. E. 177, 53 L. R. A. 241; *Pratt* v. *Patterson,* 112 Pa. St. 475, 3 Atl. 858; *Alvord* v. *Cook,* 174 Mass. 120, 54 N. E. 499. The plaintiff cannot benefit by an imposition practiced upon the defendant by the very person whose conduct he must adopt to show any sale whatever.

Perhaps it is not irrelevant to call attention to *Gormley* v. *Dangel,* 214 Mass. 5, 100 N. E. 1084, a substantially parallel case. The plaintiff was generally authorized to find a purchaser, and negotiated with the defendant for a sale at $6,000, the lowest price the owner would take. The defendant ceased to negotiate with the plaintiff, posed as broker and effected a sale by the owner to one Ross who was, secretly, a dummy purchaser for the defendant. The defendant as an independent broker collected a commission from the owner, thereby getting the property from the owner really at the owner's price less commission. The court held that this conduct of the defendant was fraudulent to the plaintiff broker, and allowed the broker to recover his commission from the defendant. It appeared that the owner in good faith supposed Ross was the real purchaser and the defendant a broker in fact. As to the bearing of good faith on the part of the owner, the court says (p. 7): "If the owner, knowing that Ross was merely the tool or agent of the defendant, had made the conveyance to him, the plaintiff could have recovered his commission from the owner." The possible liability of the owner for commission is

thus based on the assumption of her lack of good faith. But in that case, as in the present, the owner's good faith in supposing that she was actually selling to a third party, was apparently unquestioned. In that case, too, the good faith of the owner in paying a commission to the one she innocently supposed was a disinterested broker, is the same in effect as the good faith of the defendant in selling to a third party at a less price than she would have sold if she had become obligated to pay a commission. For various somewhat analogous situations see *Quist* v. *Goodfellow*, 99 Minn. 509, 110 N. W. 65, 8 L. R. A. (N. S.) 153, and cases collected in the note.

We agree with the plaintiff's claim, that the defendant was not released from the obligation to pay a commission merely from the fact that she sold for a less price than that to which the broker was limited; nor was she released by the mere fact that she in person made the sale; but we hold that the defendant did not as matter of fact sell to Robertson, and that, under the settled rules of agency, the plaintiff was not the procuring cause of the sale to Ehlers in any such sense as will entitle him to a commission.

There is error, the judgment is reversed and the cause remanded with directions to enter a judgment for the defendant.

In this opinion the other judges concurred.