Robert Lawrence Associates, Inc. *v.* Palma Del Vecchio et al.

Robert Lawrence Associates, Inc. *v.* Helen Scanzillo et al.

Cotter, C. J., Loiselle, Bogdanski, Peters and N. O'Neill, Js.

Argued February 7—decision released June 19, 1979

*Michael L. Riccio,* with whom was *Brian J. Comerford,* for the appellants (defendants).

*T. Paul Tremont,* with whom, on the brief, was *Robert R. Sheldon,* for the appellee (plaintiff).

COTTER, C. J. In the first case the plaintiff brought suit on May 23, 1973, for damages and for specific performance of an agreement to sell a parcel of land against Palma Del Vecchio and Helen Scanzillo, the owners of approximately 1.85 acres of undeveloped land known as "Parcel 106" on "Assessor's Map No. 3530A" of the town of Trumbull, at times referred to as a triangular parcel of land located on the corner of Gisella Road and Main Street (route 25) in Trumbull. In the second case the plaintiff brought an action on the same date against Helen

Scanzillo, John Del Vecchio, Jr., and Carole Ann Del Vecchio, seeking, inter alia, to set aside the conveyances made to them of two building lots designated as lots Nos. 48 and 50, also known as and referred to as lots Nos. 60 and 62; and against Edward Scanzillo and John Del Vecchio, asking, inter alia, for a decree for specific performance of an option agreement executed by them and assigned to the plaintiff in which they agreed to sell the lots upon consummation of the purchase of parcel 106. In the alternative, the plaintiff sought monetary damages.

In the former case, judgment was rendered in favor of the plaintiff for specific performance of the agreement to convey the triangular corner parcel described above with the closing date to be as of April 16, 1973. In the second case it was conceded that specific performance did not lie as to the two lots, and judgment was rendered in favor of the plaintiff to recover money damages of $11,000 plus interest from April 16, 1973, from the defendants John Del Vecchio and Edward Scanzillo only, since the other defendants did not have notice of the option agreement concerning those lots.

## I

Upon stipulation of the parties, pursuant to Practice Book, 1963, § 606, the cases were combined for the purpose of appeal and the trial court made one finding of facts consisting of 107 paragraphs. Although the defendants did not request the trial court to include in its finding any specific paragraphs of their draft finding, which were unnumbered and which were not printed in the record, they make a widespread attack on the finding, claiming that it was made without evidence and in conflict with the

defendants' evidence; it is ambiguous, misleading, dubious, incomplete and of doubtful meaning; and the court exhibited a prejudicial bias against the defendants and in favor of the plaintiff.

The defendants have failed to pursue in their brief the challenges they have made to six paragraphs of the finding which are treated as abandoned. *Katsetos* v. *Nolan,* 170 Conn. 637, 641, 368 A.2d 172; *Thomas* v. *Ganezer,* 137 Conn. 415, 423, 78 A.2d 539. The remaining challenged paragraphs of the finding are either directly supported by the evidence printed in the appendix to the plaintiff's brief or based on inferences reasonably drawn from that evidence. *Barrett-Nonpareil, Inc.* v. *Stoll,* 168 Conn. 79, 81, 357 A.2d 481. With respect to the preparation of findings of fact, the power to determine facts that have been proven lies with the court as the trier of facts, and the credibility of witnesses must be left to the court. *Cappiello* v. *Haselman,* 154 Conn. 490, 492, 227 A.2d 79. The defendants' claim that unsupported facts were erroneously included in the finding is without merit.

As to the defendants' claim that the court erred in failing to find certain evidence, since there is no representation that the defendants specifically requested such facts in their draft finding, and since the evidence cited by the defendants does not establish that they were undisputed or admitted, we are not bound to add those facts as requested. Practice Book, 1978, §§ 3022, 3034; *White Oak Excavators, Inc.* v. *Burns,* 172 Conn. 478, 480, 374 A.2d 1097; *Dargie* v. *Hartford,* 150 Conn. 261, 263, 188 A.2d 491. Nor have the defendants printed evidence in their brief to support some of those paragraphs; and, as to others, the effect would only be to present a more

detailed account of the circumstances without affecting the result. *Rushchak* v. *West Haven,* 167 Conn. 564, 566, 356 A.2d 104.

Likewise, the finding cannot be corrected as to evidentiary rulings made by the court since four such claims of error have been abandoned, and the remaining evidential ruling cannot be included in the court's finding since it was not contained in the defendants' draft finding as required by § 3028 of the 1978 Practice Book. Cf. *Long* v. *Loughlin,* 171 Conn. 291, 292, 370 A.2d 925. The remaining claims are not material to our disposition of the appeal. *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759.

## II

The pertinent subordinate facts as found by the court from conflicting evidence, supported by the appendices where necessary and with such corrections as are warranted, may be summarized as follows: Originally all the parcels involved, as described above, had been owned by John Del Vecchio and Edward Scanzillo, experienced businessmen, who had developed real estate holdings. Prior to the middle of 1966 they conveyed the corner parcel to their wives, Palma Del Vecchio and Helen Scanzillo, but continued to manage their wives' business affairs. They retained ownership, however, of the two smaller lots which are the subject of the second suit. In spite of the conveyance to their wives, they nevertheless remained interested in any proposed plans which might have developed concerning the corner parcel.

Harry Gould, president and treasurer of the plaintiff, Robert Lawrence Associates, Inc., became interested in developing property located in the area

of Main Street (route 25) and Gisella Road in Trumbull for a shopping center and other commercial and residential uses. The property consisted of adjacent parcels of land owned by different individuals and comprised approximately thirty-seven acres. Gould contemplated putting together the several adjacent parcels and obtaining approximately seventeen acres of that portion of the property fronting in part on Main Street, route 25, rezoned from residential to business-commercial. He contacted the owners of various parcels and discussed purchasing them on an option basis, subject to his ability to change the zone from residential to business-commercial. He purchased one parcel located to the east of the "corner parcel" from Emil Renzulli on November 13, 1967, and transferred it to the plaintiff on the same date, and he also contracted to purchase a thirty-five acre adjacent parcel owned by John Bozogan, subject to his ability to change the zone from residential to business-commercial. The plaintiff, pursuant to that contract, acquired title to that thirty-five acre parcel by deed dated July 2, 1976.

Gould approached the defendant, Edward Scanzillo, and unsuccessfully attempted to negotiate the purchase of the corner parcel containing 1.85 acres which was zoned for one-half acre residential in 1967, and which was adjacent to the other parcels. Originally, that parcel was owned in partnership by the defendants, Edward Scanzillo and John Del Vecchio, who subsequently conveyed that parcel to their wives, the defendants, Helen Scanzillo and Palma Del Vecchio.

Having been unsuccessful in dealing with Scanzillo, Gould employed Honychurch Realtors of

Trumbull to act as the plaintiff's agent to acquire both the corner parcel owned by the wives of Scanzillo and Del Vecchio and the two building lots which were owned in partnership by Edward Scanzillo and John Del Vecchio. Edith Stein, a real estate broker employed by Honychurch Realtors, approached Edward Scanzillo in early 1967 regarding the sale of these properties. Scanzillo told her that he would be willing to sell if she could find an interested buyer. Mrs. Stein advised him on February 3, 1967, that she had a buyer for the corner parcel who would pay $45,000. At the time, Scanzillo believed that this was a fair price. That amount was far in excess of the fair market value, approximately $34,000, of the parcel at the time, based on comparable sales, which indicates the importance the plaintiff placed upon that land in the overall development and design of its prospective shopping center.

After the contract for the sale of the corner parcel was typed at the office of Honychurch Realtors, Scanzillo drove Mrs. Stein to New Britain to discuss the contract with John Del Vecchio on the day that the contract and the option agreement were signed and the deals consummated. The contract for the sale of the corner parcel was reviewed with Scanzillo and John Del Vecchio. At the same time a separate option agreement was prepared for the sale of the two building lots owned by them. Edward Scanzillo and John Del Vecchio executed the option agreement in Mrs. Stein's presence. At the time that the option agreement was made out and executed, the clause in the contract for the sale of the corner parcel, parcel 106, which referred to the two building lots, parcels 48 and 50, was scratched or

penciled out.[1] That same day, Mrs. Stein and Edward Scanzillo drove to the Del Vecchio home in New Britain, where Palma Del Vecchio signed the contract (Exhibit D) for the sale of the corner parcel after a brief discussion in Mrs. Stein's presence. Scanzillo and Mrs. Stein then drove back to the restaurant in Bridgeport where Helen Scanzillo signed the contract for the sale of the corner parcel. Mrs. Stein was a witness to the signatures of Palma Del Vecchio and Helen Scanzillo.

The typed agreement for the sale of the corner parcel[2] and the option agreement[3] for the sale of the two building lots list Emma Kottsieper as the buyer

---

[1] The latter finding is supported by the appendix and transcript.

[2] "AGREEMENT TO SELL AND BUY REAL ESTATE

Helen Scanzillo and Palma Del Vecchio of Bridgeport, Conn. (herein called the 'Seller') hereby agrees to sell and convey to Emma Kottsieper of Trumbull, Conn. (herein called the 'Buyer') hereby agrees to buy that certain parcel of land . . . known as Parcel 106 Map 3530A as shown on the Assessor's Map, Trumbull, Conn., and further described as follows:

> 2.3 acres at the corner of Route 25 and Gisella Road in the Town of Trumbull, County of Fairfield, State of Connecticut.

on the following terms:

1. Purchase Price. The full purchase price is $45,000.00.
Cash deposit herewith the receipt whereof is hereby acknowledged by escrow with Honychurch Agency — $2,000.00.

2. Conveyance — Upon payment in full to the Seller of the balance due on the adjusted purchase price the Seller will convey said premises to the Buyer by warranty deed, said title to be subject only to any and all provisions of any ordinances, municipal regulation, or public or private law.

3. Adjustments and Closing — Taxes, water charges, fuel, rent and mortgage interest, if any, shall be adjusted between the parties in the usual and customary manner as of the date of closing on or before ninety days after zoning approval.

. . .

5. Agent — The Buyer recognizes Honychurch Realtors as the agent making this sale and will pay to him the commission.

6. This Agreement is also subject to the following conditions:
Subject to Buyer obtaining a change in zone from residential to business commercial. Deposit to be returned to Buyer if zoning not

of the respective properties. Mrs. Kottsieper was the mother-in-law of Charles Honychurch, a principal in Honychurch Realtors. Her name was frequently used by him, with her knowledge and consent, when he purchased property for his own use or when he acted on behalf of an undisclosed principal. Mrs. Kottsieper assigned her interest in the agreement for the sale of the corner parcel to the plaintiff, which assignment and agreement were recorded on July 11, 1967, in the Trumbull land records. She also assigned her interest in the option agreement for the sale of the two building lots to the plaintiff; that assignment and that option agreement, however, were never recorded. The option agreement for the sale of the two building lots pro-

---

obtained. Buyer agrees to apply to zoning within 90 days, at Buyer's expense. A total of $15,000.00 shall be paid on closing of title and the balance of $30,000.00 by purchase money mortgage for a period of five years. Interest shall be paid semi-annually at 6% per annum. Seller agrees to subordinate to a recognized lending institution. . . . In the event of an appeal from the change of zoning, then this contract shall extend until such time as the appeal has been settled, at expense of the Buyer.

The Buyer has right of prepayment of mortgage.

Balance in cash at closing.

This Agreement shall be binding upon the heirs, legal representatives and assigns of the Seller and Buyer.

In witness whereof the Seller has hereto set his hand and seal this 3rd day of February, 1967 at _____ , Conn.

In witness whereof the Buyer has hereto set his hand and seal this 25th day of January, 1967 at Trumbull, Conn.

Witnessed by
Edith H. Stein

| | |
| Helen Scanzillo | (L.S.) |
| Palma Del Vecchio | (L.S.) |
| Mrs. Emma Kottsieper| (L.S.)" |

"Feb. 3, 1967

Received of Mrs. Emma Kottsieper, hereinafter referred to as the buyer, the sum of $100.00 as a binder on his offer of $9000.00 for

vided that the closing of title to those parcels would take place "upon consummation of purchase of parcel #106," the so-called corner parcel.

## III

We consider four basic claims pursued by the defendants in their brief. Although the defendants' brief is interlaced with a variety of tangential contentions concerning those four claims, the discussion of those claims is dispositive of these combined appeals. They claim: The court was in error in ordering a decree of specific performance of the corner parcel in favor of the plaintiff; the court erred in failing to find that the defendants were

---

the property located at

Subject to the following conditions: Buyer has option to purchase 2 additional lots, parcel #48 and parcel #50 on map 5215B Trumbull, Conn.

Purchase price of $9000.00 to be paid in cash at time of closing, upon consummation of purchase of parcel #106 on map 3530A Trumbull, Conn. All deposits to be held in escrow by Honychurch Realtors.

Balance in Cash at Closing.

Taxes, water, fuel, rent assessments and mortgage interest to be adjusted pro-rata as of date of transfer.

IF THE ABOVE OFFER AND CONDITIONS ARE NOT ACCEPTED BY THE OWNER THE DEPOSIT HEREIN PAID WILL BE RETURNED IN FULL.

If this offer is accepted by owner then a contract of sale with an additional deposit of $ . . . . . . shall be signed by the buyer and the owner on the terms hereinabove mentioned, or any subsequent terms agreed upon between the owner and the buyer, within . . . . days from date.

HONYCHURCH REALTORS
By: Edith H. Stein Mrs. Emma Kottsieper
 Witness for all _____
 Buyer
Accepted by seller John Del Vecchio
 2-3-1967 _____
 Buyer
Filed May 31, 1973 E. Scanzillo, Seller "

fraudulently induced to execute the "agreement"; a valid contract did not come into existence for the sale of the parcels due to lack of consideration; and the plaintiff failed to perform "a condition precedent to the formation of the contracts," viz., whether the funds, the $2000 deposit "acknowledged by escrow with Honychurch Agency" as to the corner lot and the sum of $100 as a binder "received of Mrs. Kottsieper" as to the two building lots, were in escrow when the contract was signed.

## A

The options or agreements herein relate to an interest in land and are subject to the provisions of the Statute of Frauds. General Statutes § 52-550. Such contracts for the sale of real estate must contain with certainty, without recourse to parol proof, at least the essentials which describe the subject of the sale, its terms, and the parties to the contracts, thereby furnishing evidence of a complete agreement. *Botticello* v. *Stefanovicz,* 177 Conn. 22, 31, 411 A.2d 16. Where possible, an agreement will be so construed as to effectuate the reasonable intention of the parties, if that can be ascertained; and the determination that an agreement is sufficiently definite is favored. *Spicer* v. *Hincks,* 113 Conn. 366, 155 A. 508.

The contract for the sale of the corner parcel, which is the same property described as the 1.837 acre piece shown on the survey map, provided in pertinent part that the agreement (see footnote 2) was subject to the buyer's obtaining a change of zone from residential to business-commercial. The buyer agreed "to apply to zoning within 90 days" and the deposit was "to be returned . . . if zoning not

obtained." The agreement also provided: "In the event of an appeal from the change of zoning, then this contract shall extend until such time as the appeal has been settled, at expense of the Buyer."

The agreement for the sale of the corner parcel was in writing, signed by the parties to be charged, and clearly identified the subject matter. At this point, however, the defendants attack "the reasonableness of the terms of the alleged contract." The subordinate fact found by the court that the contract sales price for the corner parcel of $45,000 as of February 3, 1967, was far in excess of the fair market value, approximately $34,000, was supported by the testimony of a real estate appraiser with twenty-one years experience who was familiar with land and land values in Trumbull and who relied on comparable sales, including the sale of the adjoining thirty-five acres which went to contract in 1967. In addition, Edward Scanzillo, who was also familiar with the land and land values in the vicinity, stated on cross-examination that he thought it was a fair price. The terms of the contract, which was validly assigned in writing to the plaintiff by Mrs. Kottsieper and recorded on the Trumbull land records, specifically provided for such an event and it also provided that the assignment would be binding upon the seller. In addition, the language of the contract designated that the buyer "would apply to zoning" for a change in classification from residential to business-commercial within ninety days, and in the event of an appeal from the change, then the contract was to extend until such time as the appeal had been settled. The intention of the parties who have reduced their agreement to a writing is to be determined from its language. The "essentials of the agreement must be determined from the memo-

randum itself or 'by a reference contained therein to some other writing or thing certain.'" *Didriksen* v. *Havens,* 136 Conn. 41, 47, 48, 68 A.2d 163. The contract in the present case satisfied the requisite elements of the Statute of Frauds.

## B

We have recognized that it is the general rule that an undisclosed principal may at any time appear in his true character and claim all the benefits of an agreement from the other contracting parties since the contract of an agent is in law the contract of the principal. *Ritch* v. *Robertson,* 93 Conn. 459, 468, 106 A. 509; *Sullivan* v. *Shailor,* 70 Conn. 733, 736–37, 40 A. 1054; *Sutton* v. *Mansfield,* 47 Conn. 388; 2 Restatement (Second), Agency § 302; 1A Corbin, Contracts § 255; 3 Am. Jur. 2d, Agency § 322. The other contracting party will be let in, however, to all the equities, setoffs and other defenses to which he would have been entitled if the action had been brought in the agent's name. *Ritch* v. *Robertson,* supra, 468.

The defendants assign as error the omission by the trial court in the finding of facts that Mrs. Stein represented, or placed time limits on, how long it would take to obtain zoning approval. Since the defendants do not claim that their draft finding contained such a specific and proper request, and do not claim that it was admitted or undisputed, especially where the evidence was in conflict, the finding cannot be so enlarged or corrected. Practice Book, 1978, §§ 3022, 3034. Furthermore, she could not guarantee the amount of time which would be required in order to obtain zoning approval.

The defendants in each case in their brief "strongly urge this court to weigh the facts as elicited at the trial . . . and then in the light of those facts to determine whether the trial court's conclusions and final judgment are truly based legally and logically from the evidence before that court." It is fundamental that it is for the trier, not for the appellate court, to weigh the evidence in reaching those conclusions.

Where there is conflicting evidence, as claimed by the defendants, we do not retry the facts or pass upon the credibility of the witnesses. The trial court determines the credibility of witnesses; *Faiola* v. *Faiola,* 156 Conn. 12, 15, 238 A.2d 405; *Romaniello* v. *Dyna Distributors, Inc.,* 154 Conn. 605, 606, 227 A.2d 430; and the weight of the evidence is not determined by the number of witnesses for or against any one proposition. *Cooke* v. *United Aircraft Corporation,* 152 Conn. 214, 218, 205 A.2d 484. Where the evidence, as here, is in conflict, its probative force is for the trier. *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 359, 232 A.2d 916.

We cannot, therefore, satisfy the defendants and disturb thereby the court's finding where the evidence is in disagreement and clashes with the explicit written language of the two agreements specifically demonstrating that the parties reasonably considered, among other things, a zoning appeal at the time they signed the contracts. "Where the parties have reduced their agreement to a writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." *Didriksen* v. *Havens,* supra, 48.

## C

On April 26, 1967, the Trumbull planning and zoning commission held a hearing on an application dated March 23, 1967, filed by Gould for the plaintiff, to rezone from residential to business-commercial portions of the land under contract, including the corner parcel. Gould expended a considerable amount of work and money in presenting the application for a change of zone, and on May 18, 1967, the commission granted the change of zone, effective as to the corner parcel, approximately fifteen adjacent acres fronting in part on Main Street (route 25) and in part on property owned by others.

An appeal was taken from the action of the commission to the Court of Common Pleas by an adjoining owner on May 29, 1967. An extensive delay occurred in the appeal because of the loss or misplacement by the commission or its attorneys of certain documents necessary for the proper preparation of a return of record with that court. Finally, the plaintiff's attorney was successful in having the record reconstructed. After a hearing, the Court of Common Pleas dismissed the appeal on December 22, 1969. An appeal was then taken, however, to the Supreme Court by adjoining owners and on January 4, 1973, the action of the commission in changing the zoning classification of a forty acre parcel of land from residential zone A to commercial zone B-C was again affirmed by the Supreme Court when it upheld the judgment of the Court of Common Pleas. *Lathrop* v. *Planning & Zoning Commission,* 164 Conn. 215, 216, 319 A.2d 376.

We agree, therefore, with the implicit finding of the trial court that the delay was not caused by the

plaintiff's action. Cf. *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819.

## IV

Gould gave a deposit to Honychurch Realtors in the total amount of $2000 pursuant to the provisions of the typed contract for the sale of the corner parcel. The deposits were in the form of two checks in the amount of $1000 each, dated January 20 and January 24, 1967. There was at least $2000 available in the plaintiff's account at James Staples and Company, the plaintiff's bank, from which the deposit checks could have been issued during the period from December 31, 1966, to May 31, 1967, and the $2000 deposit money was found by the court to be in the trustee account of Honychurch Realtors at the time the case was tried.

Edward Scanzillo's initials appear on the original option agreement (footnote 3) for the sale of the two building lots after the words "Received of Mrs. Emma Kottsieper, hereinafter referred to as the buyer, the sum of $100." When the option agreement was executed, Mrs. Stein had the sum of $100 as specified in the agreement, "in good faith money," which was held in the escrow account of Honychurch Realtors pending consummation of the transaction.

The defendants' claims that conditions precedent to the formation of the contracts were lacking, therefore, are not persuasive.

## V

On February 2, 1973, Attorney Bernard Green, representing the plaintiff, advised the defendants by certified mail, return receipt requested, that Robert

Lawrence Associates, Inc., was prepared to close title under both agreements on both the corner parcel and the two building lots within ninety days of the decision of the Supreme Court.

Subsequently, Attorney Green received a telephone call from Attorney Michael L. Riccio, representing the defendants, and he sent him copies of the agreements and again requested that the closings take place. It is clear from the finding, as supported by the transcript, that despite the many requests the defendants refused to close the sale of the corner parcel. On the other hand the defendants Del Vecchio and Scanzillo had conveyed the two building lots described in the option agreement to other parties in 1969 and 1971. When Attorney Green was unable to effect the closings, on May 23, 1973, he instituted the actions which comprise this appeal and caused two lis pendens to be recorded on the Trumbull land records affecting both the corner parcel and the two building lots.

Subsequent to the execution of the agreement for the sale of the corner parcel the defendants Edward Scanzillo and John Del Vecchio called Honychurch Realtors and Attorney Green on many occasions, at least through 1972, expressing concern over the delay in the zoning appeal and a desire to close on said parcel.

Scanzillo and Del Vecchio were experienced businessmen who had developed numerous real estate holdings, including Palamar Drive in Fairfield and a 104 lot subdivision known as Long Hill Estates just behind the property in question in Trumbull. They owned restaurant businesses and John Del Vecchio owned a shopping center in New Britain which he developed. Edward Scanzillo believed that

$45,000 was a fair price for the corner parcel which was zoned for one-half acre residential in 1967. The fair market value of the entire commercial acreage of approximately seventeen acres owned by the plaintiff was $775,000, or approximately $46,100 per acre, as of December, 1976, after a zone reclassification had been finally adjudicated.

In their assignment of errors the defendants claim that "the weight of the evidence at trial does not support a conclusion that the plaintiff was actually ready, willing and able to close within ninety days after the final court decision regarding the zoning." Under the circumstances discussed above we cannot agree. Furthermore, since the defendants refused to participate in a closing after repeated requests made by the plaintiff's attorney, the plaintiff, under these circumstances, was excused from proceeding with preparations for performance or from making formal tender of the purchase price. *Didriksen* v. *Havens,* supra, 47.

## VI

The court found as a fact, which the defendants do not challenge, that the remedy of the plaintiff at law for damages in the action under the contract is manifestly inadequate, as the corner parcel is essential to its overall plan for a shopping center, and the value of the contiguous property which it possesses without that parcel would be diminished by almost twice the amount of damages to which it would be entitled. Applications for specific performance of agreements to sell land are addressed to the discretion of the court which must determine upon the facts and under the circumstances whether the contract is fair, reasonable, on good consideration, free from fraud, surprise or mistake and made accord-

ing to the requirements of the law. *Sidor* v. *Kravec,* 135 Conn. 571, 573–74, 66 A.2d 812. As a general rule, equity, in deciding whether to grant specific performance in enforcing a contract, will consider the fairness of an agreement in accordance with the circumstances as they existed at the time of the execution of the contract even though the property contracted to be sold becomes considerably more valuable at the time performance is due. *Brown* v. *Brown,* 274 Ill. 325, 113 N.E. 634; *Temple Enterprises* v. *Combs,* 164 Or. 133, 100 P.2d 613; annot., 11 A.L.R.2d 390, 397; 71 Am. Jur. 2d, Specific Performance §§ 82, 83. Specific performance of a contract will not be refused because there has been an increase in the value of the property contracted for between the date of the contract and the time when execution is demanded where (1) the parties anticipated such an increase due to a change in zone to commercial so as to develop a shopping center and where (2) the contract at the time it was made was a reasonable and fair one. *Willard* v. *Tayloe,* 75 U.S. (8 Wall.) 557, 570–71, 19 L. Ed. 501.

The court properly decreed specific performance of the agreement to convey the corner parcel to the plaintiff, and its conclusions that the agreement was fair, made on adequate consideration and according to the requirements of law were supported by its finding of the subordinate facts. *Burns* v. *Garey,* 101 Conn. 323, 330, 125 A. 467.

## VII

As to the breach of the option agreement for the sale of the two building lots the previous discussion has similar application since the cases were tried together and because we have collectively and thoroughly reviewed the evidence, the rulings, the find-

ings and conclusions of the court as they pertained to both cases. The agreement[4] specifically provided that the purchase price of $9000 was to be paid in cash at the time of closing upon consummation of purchase of the corner parcel, and that all deposits were to be held in escrow by Honychurch Realtors; receipt of the $100 deposit was acknowledged by the defendant Scanzillo, which was to be held by Mrs. Stein in the trustee account of Honychurch.

The agreement was in writing, signed by the parties to be charged and clearly identified the subject matter. It referred to the agreement for the sale of the corner parcel and provided for the closing of title as above described. To comply with the Statute of Frauds, § 52-550, a written memorandum need not consist of a single document, nor is it necessary that it should be drawn up in any particular form. *Burns* v. *Garey,* supra, 329.

The defendants John Del Vecchio and Edward Scanzillo conveyed one lot on May 20, 1969, to John Del Vecchio, Jr., who in turn on April 30, 1971, conveyed his interest therein to his wife, Carole Ann Del Vecchio; the other lot was conveyed on the same date to Helen Scanzillo, who later conveyed it to Van Stone, and homes were built on the lots. The option agreement to convey these lots was never recorded and the purchasers had no notice of the agreement.

The plaintiff intended to use the two building lots to gain access to Gisella Road as a means of entry to that portion of the property which remained residentially zoned and which would ultimately become a subdivision.

---

[4] See footnote 3.

The court found that in the spring of 1973 the fair market value of the lots was $10,000 each. The defendants, however, assign this as error and state: "In fact, the evidence at trial was that each of the lots had a fair market value of $15,000 in the spring of 1973, for a total market value of $30,000 for both lots." Obviously, the court's finding on valuation, in view of the defendants' reasoning, cannot be harmful or prejudicial to them since it found that the valuation of the lots as of 1973, the date of compliance, was less than $15,000 for each lot. The trier is the final judge of the credibility of the evidence and the weight to be given to it and may accept or reject the testimony of a witness offered by one party or the other in whole or in part. *Whewell* v. *Ives,* 155 Conn. 602, 607, 236 A.2d 92.

It is also significant that the defendants at one point in their assignment of errors state: "Uncontroverted evidence at trial clearly showed that the defendants were willing to close and in fact, anxious to close for at least four years after the signing of the alleged contracts. They made repeated calls to Attorney Green, the plaintiff's attorney, in order to inquire as to the status of the deal. They also made inquiries to the Honychurch Agency." This statement of the defendants would connote that sometime in 1973 they had no quarrel with the contractual validity of the agreements at the time they were executed by the parties but that it was only sometime after 1973 that they commenced to consider grounds upon which they claimed legal infirmities in the original transactions.

Courts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or

improvident, are entitled nevertheless to sanctions of the law. *Osborne* v. *Locke Steel Chain Co.,* 153 Conn. 527, 531, 532, 533, 218 A.2d 526.

Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement; contracts voluntarily and fairly made should be held valid and enforced in the courts. *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 375, 377, 321 A.2d 444; 4 Williston, Contracts (3d Ed.) § 610. The trier may accept whatever evidence it finds reasonably credible in resolving conflicting versions of the existing circumstances. *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 349, 225 A.2d 797.

Whether the plaintiff was ready, willing and able to consummate the option agreement as found by the court is immaterial since the defendants, as in the first case, not only refused to perform but could not do so since they had already conveyed the land. *Didriksen* v. *Havens,* supra, 47.

There was sufficient evidence to support the court's finding that the plaintiff was entitled to a recovery in the amount of $11,000 based on the rule that the measure of damages was the difference in value between the purchase price recited in the 1967 option agreement and the actual value of the lots in the spring of 1973. *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 348–49, 232 A.2d 307; *Pirchio* v. *Noecker,* 226 Ind. 622, 82 N.E.2d 838; 5 Williston, Contracts (Rev. Ed. 1937) § 1399; 2 Sutherland, Damages (4th Ed.) § 588.

From the conflicting testimony and the documentary evidence, the court has found subordinate facts which fully support its conclusions which are material and dispositive of our view of the case.

There is no error.

In this opinion the other judges concurred.