[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action involves the enforceability of a certain agreement relating to the purchase of real property located in Stamford. The second amended complaint, dated December 30, 1993, filed by plaintiff, Set To Fit Realty, alleges that it is a general partnership owning property at 65 Harvard Avenue in Stamford. Plaintiff claims that it entered into a written agreement with the defendant. First Stamford Corporation (First Stamford), granting this defendant the option to purchase the subject premises and that First Stamford reneged on the agreement.
The complaint contains eight counts. In the first count, the plaintiff alleges that First Stamford (hereinafter "defendant") breached its contract in that it negotiated in bad faith by refusing to sign an option agreement after previously agreeing with all its terms, and also in failing to disclose to the plaintiff that it was operating as an undisclosed agent for an unidentified principal. The second count alleges breach of contract on the basis of a letter, dated September 19, 1990, from the attorney for the defendant indicating that his client agreed with the proposed terms of the option agreement and that the defendant would attend a closing scheduled for October 10, 1990, to sign the option.[1] In the third count, the plaintiff asserts a breach of the covenant of good faith and fair dealing because the plaintiff negotiated in good faith for five months with the defendant, and that defendant declined to execute an option agreement at the last moment for no expressed reason. Plaintiff also claims in the third count that the defendant was acting as an agent for some other entity during the course of the negotiations concerning the option. In the fourth count, Set To Fit Realty alleges misrepresentations by First Stamford in failing to reveal its agency status or that it had any reservations or questions about the terms of the option agreement, and that as a result of such misrepresentations, plaintiff ceased efforts to market the subject premises. The fifth and sixth counts assert violations by the defendant of General Statutes 42-110a, et seq., the Connecticut Unfair Trade Practices Act (CUTPA). Plaintiff claims that defendant engaged in deceitful and unfair trade practices, including a refusal to sign the option agreement and then subsequently purchasing the subject premises at a reduced price of $1,200,000 through the efforts of a broker who did not reveal he was acting for the defendant. The two remaining counts, CT Page 4057 seven and eight, are directed against other defendants, Gordon Paterson, Milton Mann, Equitable Life Assurance Corporation, and Equitable Real Estate Investment Management, Inc., and allege that these individuals and companies are also liable to the plaintiff for the defendant's refusal to sign the option agreement. The defendant asserted a special defense that plaintiff was entitled to a maximum recovery of $10,000 representing legal fees it had incurred in the preparation of the option agreement.
Attached to the complaint is a copy of an agreement between the plaintiff and defendant dated May 3, 1990, in which plaintiff, acting by two general partners, agreed to grant to the defendant, acting by Milton Mann, its treasurer, an option for $450,000 to purchase 65 Harvard Avenue during the following three years for $2,400,000. This document forms the basis of plaintiffs claims of breach of contract. However, this agreement regarding an option was subject to "the execution and delivery of a definitive agreement.[2]
The defendant has now moved (#121) for summary judgment as to the counts directed to it on the basis that an option agreement was never signed and hence is unenforceable. The seventh and eighth counts which are directed to the other defendants are not the subject of this motion for summary judgment.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wadia Enterprises v. Hirschfeld,224 Conn. 240, 247, 618 A.2d 506 (1992). A material fact is one that will make a difference in the result of a case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). "`The test is whether a party would be entitled to a directed verdict on the same facts.'" Id., quoting State v. Groggin, 208 Conn. 606, 616,546 A.2d 250 (1988).
The moving party in a summary judgment motion "has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Citations and internal quotation marks omitted). Suarez v. Dickmont Plastics Corp, 229 Conn. 99, 105,___ A.2d ___ (1994). However, if the evidence presented is sufficient, it is "not rebutted by the bald statement that an issue of fact does exist." (Citations and internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., supra, 579. In deciding such a motion, the court must view the evidence in the light most favorable to the nonmoving party. CT Page 4058 Connecticut Bank Trust Co. v. Carriage Lane Associates, supra.
"Generally speaking, summary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." United Oil v. Urban Redevelopment Commission, 158 Conn. 364, 375,260 A.2d 596 (1969). "In ruling on a motion for summary judgment, the trial court's function is not to decide issues of material fact, but rather to decide whether any such issues exist." (Citations and internal quotation marks omitted.) Dolnack v. Metro-North Commuter Railroad Co.,33 Conn. App. 832, 838, ___ A.2d ___ (1994).
In support of its motion for summary judgment, the defendant submitted affidavits from Mann and Paterson accompanied by copies of correspondence between the attorneys for the plaintiff and for the defendant. Mann's affidavit points out quite correctly that an option agreement was never signed, although the parties clearly were negotiating the terms of such an agreement, and that there were letters back and forth between the attorneys. For example, plaintiff's counsel sent a "draft" of a document to Attorney Paterson representing the defendant. Mr. Paterson's affidavit also indicates that plaintiff and defendant never signed a "definitive agreement that such an agreement had not been drafted at the point when negotiations were broken off, and that the option price of $450,000 had not been paid to plaintiff. Paterson agreed that a new company called "Sixty-Five Harvard Avenue Corporation" had been formed as the potential purchaser of the premises and he agreed that negotiations had gone on for approximately five months.
In Wadia Enterprises, Inc. v. Hirschfeld, 27 Conn. App. 162, 166,168-70, 604 A.2d 1339, aff'd 224 Conn. 240, 618 A.2d 506 (1992), the Appellate Court summarized the obligations of the nonmovant in a motion for summary judgment: (i) the party opposing summary judgment must substantiate its claim to the contrary by showing that there is a genuine issue of material fact, and must disclose the evidence establishing the existence of such an issue; (ii) "[m]ere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment:" (iii) "[i]t is not enough that one opposing a motion for a summary judgment claims that there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit:" (iv) "[i]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred;" and (v) "[m]ere CT Page 4059 statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue." (Citations and internal quotation marks omitted).
The plaintiff, in opposing the defendant's motion for summary judgment, submitted affidavits by James Matera, a principal of Set To Fit Realty, Glenn Angiolillo, an attorney for Cummings Lockwood, which represented plaintiff, and excerpts of deposition testimony of Mann and Paterson. Matera claims that the defendant acted as an agent for a third party, and had he known this, the plaintiff would not have waited for five months in order to sell the property. Matera states that the negotiations for the option were without complications and all the terms had been agreed upon. He testified that a year later, in the summer of 1991, a New York law firm acted as an agent for another possible purchaser of the premises known as Harstam Realty, and that the property was sold to this entity in the summer of 1992 for $1,200,000, instead of $2,400,000, the sales price indicated in the option agreement. In his affidavit, Attorney Angiolillo describes the May 3, 1990, document as an "expression of interest in purchasing an option to purchase" 65 Harvard Avenue. The affiant states that he did not realize the defendant was acting as an agent for someone else, that negotiations had proceeded without any real problems, and that it was only the day before the scheduled closing that it was called off by defendant. Mr. Mann agrees in his deposition that at all relevant times the defendant was acting as an agent for Equitable Life Assurance Corporation, which decided that the sales price was too high and thus refused to authorize execution of an option agreement. He also agrees that Harstam Realty was formed by himself and the defendant as an vehicle to purchase the property in the summer of 1992, without disclosing its connection with defendant. The reason was that Mann understood that the plaintiff did not want to do any more business with the defendant because of its having broken off negotiations regarding the option agreement at the last moment. In his deposition Paterson indicates that he had told plaintiff's lawyers, Cummings Lockwood, during the negotiations about the option, that defendant was not the real party in interest.
It is evident that the defendant did not sign the option agreement which is the basis for this law suit, and it is equally clear that an option agreement to purchase realty falls squarely within the requirement of the statute of frauds. This statute provides that: "(a) [n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property. . . ." An option agreement regarding realty must be in CT Page 4060 writing in order to be enforceable. Robert Lawrence Associates, Inc. v. Del Vecchio, 178 Conn. 1, 11, 420 A.2d 1142 (1979). Plaintiff's contentions in resisting summary judgment, none of which I believe are sound, can be summarized as follows: (1) that when the parties reach an agreement regarding the essential terms of a contract, they are obliged to sign it; (2) that Attorney Paterson's September 19, 1990, letter that did not assert any disagreements about the terms of the option, binds his client to sign an option: (3) that the defendant acted in bad faith and is guilty of misrepresentations by not disclosing that it was acting for Equitable Life Assurance Company; and (4) that defendant violated CUTPA. However, the plaintiff does not claim that there are any genuine issues of fact regarding the execution of the option. Plaintiff's own lawyer in his affidavit described the May 3, 1990 agreement as an "expression of interest in purchasing an option to purchase" the subject premises. The agreement itself clearly states that it is "subject to the execution and delivery of a definitive Agreement." The parties themselves provided for the distinct possibility that the option agreement would never be signed because they agreed that defendant would pay plaintiff $10,000 in that event to cover the latter's legal fees. Thus, the statute of frauds prevents enforcement of the option agreement because it was never signed by the party sought to be charged.
There are indeed exceptions to the statute of frauds but plaintiff does not seek to invoke any such exception. For example certain acts by a promisee may be sufficient to take an oral contract out of the statute. Ubysz v. DiPietro, 185 Conn. 47, 54. 440 A.2d 830 (1981). "The doctrine of part performance requires . . . conduct that is `referable to and consistent with [an] oral agreement [between] the parties.'" (Citation omitted). Dunham v. Dunham, 204 Conn. 303, 314,528 A.2d 1123 (1987). The court must find that the party seeking enforcement of the agreement: (1) reasonably relied on the agreement and on the continuing assent of the party against whom enforcement is sought; and (2) that the party has so changed his position that injustice can only be avoided by specific enforcement of the agreement. Id., 315. Related to the doctrine of part performance is the concept of estoppel. A claim of estoppel is predicated upon proof "`of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.'" (Citation omitted.) O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729
(1990). No claims of estoppel, detrimental reliance or part performance are asserted by the plaintiff or set forth in the affidavits in opposition to summary judgment. CT Page 4061
The plaintiff also contends that defendant breached the implied covenant of good faith and fair dealing. This claim is premised on defendant's last minute decision not to sign the option agreement. It is true that Connecticut recognizes the doctrine of good faith and fair dealing in the performance of contractual obligations. Magnan v. Anaconda Industries, Inc., 193 Conn. 538, 567, 479 A.2d 781 (1984). "`Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" Warner v. Konover,210 Conn. 150, 154, 553 A.2d 1138 (1989), quoting 1 Restatement (Second), Contracts 205 (1982). However, no authority has been cited which supports the contention that failing to execute a contract that was within the statute of frauds and specifically provided that it was contingent upon the execution of a subsequent and "definitive" agreement constitutes bad faith and unfair dealing. "Neglect or refusal to fulfill a contractual obligation" can constitute bad faith under certain circumstances; Feinberg v. Berglewicz, 32 Conn. App. 857, 862,632 A.2d 709 (1993); but in this case the defendant did not have an enforceable contractual obligation. The implying of a covenant of good faith and fair dealing in every contract is for the purposes of evaluating one's performance of a specific contract. Restatement (Second) Contracts, 205 (1981); see Hoffmaster v. Guiffrida, 630 F. Sup. 1289, 1290-91
(S.D. W. Va. 1986). Since there is no enforceable contract, the duty of good faith and fair dealing does not arise.
A claim of misrepresentation by the defendant is also advanced by the plaintiffs on the basis that the latter failed to disclose that it was acting as an agent for another entity. Connecticut "has long recognized liability for negligent misrepresentation." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 217, 520 A.2d 217
(1987). "[E]ven an innocent misrepresentation of fact `may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.'" Id., quoting Richard v. A. Waldman Sons, Inc., 155 Conn. 343, 346, 232 A.2d 307 (1967); see also 522 of the Restatement Second of Torts (1979). The plaintiff appears to also contend that defendant's conduct in waiting so long to advise that it would not sign the option as well as not disclosing its agency status constitutes an intentional misrepresentation, the essential elements of which are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Miller v. Appleby,183 Conn. 51, 54-55, 438 A.2d 811 (1981). "An actionable misrepresentation, whether made knowingly, recklessly, negligently or innocently, must be made for the purpose of inducing action upon it." Frederick Scholes Agency v. Mitchell, 191 Conn. 353, 359, 464 A.2d 759 (1983). Any specific CT Page 4062 assertion of how the defendant's agency status resulted in some kind of detrimental reliance is missing from the plaintiff's affidavits, nor is there a claim that defendant made any representation at all, it simply did not disclose that it was acting for Equitable.
A violation of the Connecticut Unfair Trade Practices Act. General Statutes 42a-110 et seq. (CUTPA), is claimed. A violation of this statute ensues when: "(1) the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness: (2) it is immoral, unethical, oppressive, or unscrupulous: and (3) it causes substantial injury to consumers (competitors or other businessmen)." (Citations omitted). Vezina v. Nautilus, 27 Conn. App. 810, 818-19, 610 A.2d 1312
(1992). A simple contract breach is not sufficient to establish a violation of CUTPA, particularly where a count in a contract "simply incorporates by reference the breach of contract claim and does not set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous, or offensive to public policy." Aussenhandel v. Grant Airmass Corp., 2 Conn. L. Rptr. 590 (October 17, 1990, Lewis, J.). See also Emlee Equipment Leasing Corp. v. Waterbury Transmission, 3 Conn. L. Rptr. 711 (January 24, 1991, Blue, J.); Central Delivery Service of Washington, Inc. v. Peoples Bank,2 Conn. L. Rptr. 449
(October 1, 1990, Goldberg, J.). Defendant's conduct in changing its mind about the execution of the option and not telling the plaintiff that it was acting for Equitable does not appear to fit within the definition of CUTPA in any manner.
The defendant concedes that it owes plaintiff $10,000 for legal fees as agreed to by the parties in the event that the option agreement was never executed, and therefore judgment may enter in favor of the plaintiff for this amount. The defendant's motion for summary judgment is granted as to the first six counts of the complaint.
So Ordered.
Dated at Stamford, Connecticut, this ___ day of April, 1994.
William B. Lewis, Judge